[L. A. No. 1105. Department Two.—December 5, 1903.]

## LOLA A. PRATT, Respondent, v. CHARLES PRATT et al., Appellants.

NEW TRIAL—IRREGULARITY OF COURT—AFFIDAVIT—RECORD UPON APPEAL —PRESUMPTION.—Where the record upon appeal shows no objection to an affidavit on motion for a new trial as to irregularity in the proceedings of the court by which the defendants were prevented from having a fair trial, and shows no objection presented to the affidavit in the court below, it must be presumed upon appeal that the affidavit was received and considered by the court without objection.

ID.—INTERRUPTION OF TESTIMONY—COMPELLING WITHDRAWAL OF WITNESS—THREATENED PREJUDGMENT OF DEFENDANT'S TESTIMONY— ERROR OF LAW—IRREGULARITY.—Where the judge trying the cause interrupted counsel for the defendant, while examining the daughter of plaintiff and defendant as a witness for the defendant, who was giving competent testimony, and did in an irregular way control the conduct of defendant's case, and virtually threatened to prejudge the testimony of the defendant as a witness intending to testify in his own behalf, unless the daughter was withdrawn as a witness against her mother, which threat led to such withdrawal, such action of the court, conceding that it was an error of law, was a prejudicial irregularity, preventing a fair trial to the defendant, which was ground for a new trial, and for reversal of an order denying it.

APPEAL from an order of the Superior Court of Los Angeles County denying a new trial. M. T. Allen, Judge.

The facts are stated in the opinion.

S. A. W. Carver, and A. W. Hutton, for Appellants.

The action and expressions of the court, as shown by the affidavit, were an irregularity entitling appellants to a new trial. (*People* v. *Williams,* 57 Cal. 110; *McMinn* v. *Whelan,* 27 Cal. 319; *Mahoney* v. *San Francisco etc. Ry. Co.,* 110 Cal. 471; *McDuff* v. *Detroit etc. Co.,* 84 Mich. 1;[1] *Savannah etc. Ry. Co.* v. *Hardin,* 110 Ga. 433; *Lord* v. *Lord,* 3 N. Y. Supp. 567.)

Scarborough & Bowen, for Respondent.

The affidavit does not show an irregularity entitling defendants to a new trial. (11 Am. & Eng. Ency. of Law, 843; Hayne on New Trial, secs. 108, 265, 281, 285; Code Civ. Proc., sec. 475; *Coonan* v. *Loewenthal,* 129 Cal. 197; *Duffy* v. *Duffy,* 104 Cal. 602; *Edwards* v. *Wagner,* 121 Cal. 376; *Pereira* v. *City Savings Bank,* 128 Cal. 45.)

GRAY, C.—The above-named plaintiff and defendant are wife and husband. In the action the plaintiff sought an accounting from her husband in regard to his management and disposition of her separate property derived from the estate of her mother, and which she had confided to the control of her said husband on its coming into her hands. She also sought to have a certain note, mortgage, and deed, affecting a certain piece of her real estate, and executed by herself and her husband to her husband's father, decreed to be given up and canceled, because induced by the fraud and undue influence of her husband. Plaintiff had judgment, and defendants appeal therefrom and from an order denying them a new trial.

The transcript on appeal contains the judgment-roll, a statement on motion for a new trial, embracing the evidence taken and proceedings had upon the trial, and a bill of exceptions, duly settled and signed by the judge after denying the said motion, containing an affidavit used thereon for the purpose of establishing the first ground of said motion, which was "irregularity in the proceedings of the court by which the said defendants were prevented from having a fair trial." This affidavit is uncontradicted, and it sets forth that the

---

[1] 22 Am. St. Rep. 673.

affiants were present at the trial on the tenth day of April, 1900, and heard and saw all that transpired in court at the time the witness Florence D. Pratt was placed upon the witness-stand; that previously the plaintiff testified on behalf of herself that there had never been any settlement made or accounting had between herself and her husband concerning the properties or funds derived from the estate of her mother; that her husband was still indebted to her in the sum of four to six thousand dollars, as the balance of the funds of her mother's estate still in his hands unaccounted for; that her husband had admitted to her that he had received said funds for her; that after coming to California her husband bought and improved the Miltimore Tract property in her name and as her own property; that her husband had charge of renting said Miltimore Tract property, and collected and retained the rents therefrom, and attended to everything about it; that she never had or obtained any money on said property or otherwise from her own funds or property.

That on said tenth day of April, 1900, the defendant called said Florence D. Pratt to the witness-stand to testify in said cause on behalf of the defendants; that said witness claimed to have personal knowledge of certain conversations heard by her between the plaintiff and defendant Charles Pratt, regarding their property matters, and particularly regarding the Miltimore Tract property and the rents and profits therefrom and the use made of the same; and that the defendants then desired to have said witness testify regarding said matters, and expected to prove by her that during all the years since she was of an age sufficient to understand and remember family affairs she had heard the property affairs and business matters of her mother and father and her grandmother's estate matters talked over between them on many occasions, and had never heard either her father or mother in any way mention the fact of there being any unsettled matter between them concerning the property or funds derived from her grandmother's estate, Anastasia L. Clark; that during said period of time she saw and heard many money transactions between her said parents in which the money accounts between them were purported

and stated to be settled, but that in none of said instances was the matter of any balance of funds in her father's hands belonging to her mother ever mentioned between them; that of her personal knowledge, and from the statements made to her by her mother, she knew that the rents collected from the Miltimore Tract property were regularly turned over to her mother, and were not retained or used by her father; that said witness thereupon took the stand and was properly sworn and attempted to testify regarding said matters, and that the following is the substance of what then and there occurred and of the statements made respectively by the parties, to wit: Florence D. Pratt, called on behalf of defendants, sworn and testified as follows: "I am the daughter of the parties here. I will be eighteen years old next August. I was living at home all the time that Dr. and Mrs. Pratt lived in Los Angeles prior to their separation. I have at different times heard the property matters of the doctor and my mother talked over between them, particularly the Miltimore Tract property, and the rents, profits, and use of it. I don't know as I can give the date. It was at the time we were living on Jefferson Street. *The Court.*—Mr. Carver, there has been no testimony offered as to the amount of those rents and who collected them. *Mr. Carver.*—We wish to offer this testimony as against the statements of plaintiff to the effect that the defendant always got the rents. She says she did n't get them. Our answer is that defendant did get them, and paid them over to plaintiff, and that is what we wish to prove. *The Court.*—Can't you prove it by somebody else than the daughter? I don't know anything more revolting than to have a child put on the witness-stand to dispute a parent, father or mother. . . . You can use your own choice. I just simply say to you that there is no depth of infamy to which people can sink more than to put their children on the stand to testify against father or mother. I don't know anything that would condemn your client in my eyes so completely as to put that girl on the stand to testify against the mother. You would have to bolster everything he (defendant) said to make me believe anything after he did that. I have very pronounced views on it. It is shocking when a child is offered on the witness-stand to testify to anything that a mother has said as true or untrue. *Mr. Carver.*—The

defendants except to the statement and ruling of the court. Suppose that the daughter had been on the stand, and the mother should then take the stand and testify against the daughter. It does n't seem to me that it makes any difference which one is on the stand first. *The Court.*—Now, you have the whole field, go on. You have the liberty to put this girl on and have her testimony. Ask her this question if you care to. I simply want you to undertsand that it opens the door to prejudice, which every court must have that has a family. Thereupon the defendants, by reason of the foregoing expressed views and prejudice of the court, were compelled to and did withdraw said witness from the stand.''

The affidavit was subscribed and sworn to by the defendant Charles Pratt, his attorney S. A. W. Carver, and by one C. W. Sexton, and was filed, read, and considered on the motion for a new trial. No other affidavits were read upon the hearing of the motion. The bill of exceptions fails to show, nor does it appear otherwise, that any objection was made to this affidavit in the court below. We must therefore presume that it was so received and considered by the court without objection. It is objected here, however, on the part of respondent, that the action of the court in the respect disclosed by the affidavit was not an irregularity, but, if anything, a mere error of law, not to be presented on affidavits. (Code Civ. Proc., sec. 658.) It is perhaps not necessary to determine whether the conduct of the judge amounted to an error of law or not. It may be conceded to have been an error of law, and yet, possessing all the aspects of an irregularity, as it does, it was not amiss to treat it as the ground for a new trial referred to in subdivision 1 of section 657 of the Code of Civil Procedure. (Hayne on New Trial, sec. 29.) As ordinarily understood an error of law is committed when the court, either upon motion of one of the parties or upon its own motion, makes some erroneous order or ruling on some question of law which is properly before it and within its jurisdiction to make. Here, however, the court was not called upon to rule or make an order upon any question of law, but the judge interrupted counsel and undertook to and did in a very irregular way control the conduct of the case on the side of defendant. The trial judge virtually threatened to prejudge the testimony of the defendant as a witness, and

intimated that unless the daughter was withdrawn as a witness he would regard the fact of her having contradicted the mother in the father's interest as a matter seriously discrediting the latter's testimony. The judge certainly had no right thus in advance of hearing the testimony of the father to make up his mind as to the effect that previous testimony ought to have on the weight of his testimony. The testimony of the daughter as offered was competent and proper, and therefore the judge had no right to permit it to arouse in his mind a prejudice against the father. Above all, he had no right by an expression of such prejudice and its threatened results to drive the party to withdraw testimony against which no legal objection existed. The action of the judge was an irregularity. That it was extremely prejudicial to the appellant is made to appear very forcibly when we examine the findings and learn that they are against appellant in every particular to which the proposed testimony of the daughter was directed. There are then two good reasons why the objection of respondent that the matter urged could not properly be presented by affidavit should be overruled: 1. No such objection was made at the hearing of the motion; and 2. The objection would not have been valid if it had been made. The trial of a case should not only be fair in fact, but it should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand.

We find it unnecessary to determine on this appeal whether the statement on motion for new trial was settled in accordance with the provisions of the code or not. Nor will it be necessary to discuss the many questions arising on said statement.

We advise that the judgment and order appealed from be reversed.

Chipman, C., and Cooper, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

McFarland, J., Lorigan, J., Angellotti, J..

Hearing in Bank denied.