[Civ. No. 2144. Second Appellate District, Division Two.—June 7, 1919.]

## ARTHUR L. FARRAR, Appellant, v. MATILDA L. FARRAR, Respondent.

[1] EVIDENCE—WEIGHT AND CREDIBILITY.—The relative weight and credibility of conflicting testimony on any given point is a matter for the trial court.

[2] HUSBAND AND WIFE—PROPERTY STANDING OF RECORD IN NAME OF WIFE—PRESUMPTION.—Where property has always stood of record in the name of the wife, the presumption is that it is her separate property.

[3] DIVORCE—ATTORNEYS' FEES FOR WIFE—FIXING AMOUNT AFTER TRIAL—STIPULATION OF PARTIES—INCLUSION IN JUDGMENT.—While ordinarily, in an action for divorce, the allowance of attorneys' fees to the wife must be made in contemplation of services to be rendered pending the action, where the matter of fixing the amount which she should receive for services of her attorneys is by express stipulation between the parties deferred to the close of the trial, the court has jurisdiction to make the order for attorneys' fees contemporaneously with the judgment. That the allowance for attorneys' fees is made in the judgment rather than by a separate order can in no wise prejudice the husband.

[4] ID.—PERMANENT ALIMONY—DISCRETION OF TRIAL COURT.—The amount to be given, if anything, as permanent alimony is a matter within the reasonable discretion of the court, and it cannot be said that $35 a month is excessive or oppressive to a man who is receiving $75 a month, in addition to his board and lodging.

[5] ID.—RELEASE OF HUSBAND FROM MARRIAGE OBLIGATION.—The allowance to the wife of permanent alimony is the enforcement of

an obligation which the husband took upon himself when he married her, and from which he cannot be permitted to free himself by deserting her willfully and without legal cause.

[6] JUDGES—STATUS AND DUTIES OF TRIAL JUDGE.—A trial judge does not sit as a mere referee in a contest of wits between counsel in the case, and it is not only within his province, but is his duty, to see that as nearly as possible the issues shall be disposed of on their merits; and it is not out of place for him to call attention to omissions in the evidence or defects in the pleadings which are likely to result in a mistrial.

APPEAL from a judgment of the trial court of Los Angeles County. Lewis R. Works, Judge. Affirmed.

The facts are stated in the opinion of the court.

Thompson & Creighton for Appellant.

Frank C. Collier and Collier, Shelton & Schlegel for Respondent.

SLOANE, J.—Plaintiff brought his action in this case for a divorce on the ground of extreme cruelty. The defendant, by her cross-complaint, alleged desertion and adultery. The judgment was for defendant on the ground of desertion. The appeal is taken by plaintiff and cross-defendant from the part of the judgment disposing of the property rights, and awarding to defendant alimony and attorneys' fees.

The findings, so far as material to this appeal, are in substance as follows:

That plaintiff and defendant accumulated as community property the following property, and none other, to wit: The household furniture; the wearing apparel and personal effects of plaintiff and defendant; one automobile; and a mining interest of some kind or character in the state of Colorado.

That the following is separate property of the defendant: Easterly 41 feet of westerly 48 feet of Lot 28 in Block B of West Los Angeles; Lot 102 of Exposition Park Square, of Los Angeles; $350 in cash in possession of defendant.

That defendant has no income, but that she has about $350 in money on deposit. That plaintiff is at present em-

ployed at a grocery-store in Barstow, California, at a monthly salary of $75, in addition to his board and room; that $35 per month is a reasonable amount for permanent alimony; that two hundred dollars is a reasonable attorneys' fee to be awarded defendant.

The judgment, as to the property rights, was in accordance with these findings, and divided the community property by giving to defendant the household furniture and her personal effects and wearing apparel, and to the plaintiff the automobile, the Colorado mining interest and his personal effects and wearing apparel; the court adjudging this to be an equal division in value of the community property. The defendant also had judgment for permanent alimony at $35 per month, and two hundred dollars attorneys' fees.

[1] The main contention of appellant is that the evidence does not support the finding that the real property is the separate property of defendant. Most of appellant's argument, however, is taken up with a discussion of the relative weight and credibility of the conflicting testimony on this point. That was a matter for the trial court. It may be conceded that defendant's account of the resources from which she obtained title to this property is not very clear or convincing. She claims to have had three thousand dollars of which her husband was not aware at the time of their marriage, and as to the disposition of which, during the years previous to these real estate investments, she is very vague and noncommittal in her explanations. On the other hand, the only way appellant attempts to explain the purchase of these lots as community property, and which explanation is denied by respondent, is on the theory that a large proportion of the consideration paid for them was money saved by the respondent from an allowance of $50 per month, with perhaps one hundred dollars a year additional, which he paid to her for a period of several years. Incidentally it is conceded that she kept up all of the household expenses, and clothed herself out of this allowance. The consideration paid for the two properties was, $2,650 for the first described lot, on which the parties resided, and one thousand five hundred dollars for the other lot, aggregating $4,150. It is agreed that Mrs. Farrar had at least six hundred dollars at her marriage, and from about seven hundred dollars to one thousand

dollars subsequently inherited from her parents, and she admits that she paid about five hundred dollars of the consideration of the last-described lot from savings from her allowance; but this would still leave an additional sum of from two thousand dollars to two thousand three hundred dollars to be accounted for, and we are inclined to believe that respondent's claim that she had three thousand dollars, instead of merely six hundred dollars, at the time of her marriage is a more credible explanation of the purchase money than the surmise of appellant that she saved a total of some two thousand five hundred dollars, or over $25 a month for eight years, from an allowance of $50 per month, after paying all the current expenses of the household therefrom. [2] In addition to this, we have the presumption of separate ownership, from the fact that this property has at all times stood of record in Mrs. Farrar's name.

The defendant testified that the home place, which is all of the real estate that plaintiff in his complaint claimed as community property, "was purchased with money that was absolutely my own money. It was money that I had before I married Mr. Farrar. I had my own funds, and it was with these funds that I purchased this property." Plaintiff's complaint avers that aside from this lot which is therein alleged to be community property, "there is no other community property, excepting household goods and wearing apparel." As to the sum approximating five hundred dollars which respondent admits went into the other lot from savings accumulated from her husband's allowance to her and the cash in her possession, the court was not without evidence to justify treating these amounts as a gift from her husband. As has already been pointed out, title to this lot was taken and held in respondent's name, and the complaint concedes that it did not belong to the community. We cannot see that the court erred in its findings regarding this property. The personal property and effects found to be community property seem to have been equally divided in point of reasonable value.

Appellant complains that there is no express finding of the trial court as to the community interest in the two hundred dollar building and loan stock, and shares of the par value of two hundred dollars in the Guaranty Building and Investment Company, of which evidence was introduced.

These items, however, are covered both by the admission of plaintiff in his complaint that aside from the alleged community interest in the home place and in the household goods and wearing apparel, there was no community property, and the general finding of the court that the property enumerated as such in said finding, and none other, constituted the community accumulations of the parties. That the items above referred to were not enumerated in the judgment as separate property of appellant is in no way to plaintiff's detriment.

Relating to the Guaranty Building and Investment shares, counsel for appellant states in his brief that "there was no testimony given in regard to the matter, except the testimony of Mrs. Farrar herself, . . . which reads as follows: Q. (By Mr. Thompson.) How much of the Guaranty stock have you? A. I have two hundred shares at one dollar per share." Counsel further states that "it is not shown anywhere in the testimony that this stock is not worth its face value." This is certainly a very misleading summary of the record. The typewritten transcript contains nearly three pages of testimony of Mrs. Farrar tending to show that this company was long since bankrupt and out of business; that she had not kept up her assessments on the stock; and that she had received notice some three years previously that her shares would be sold for delinquencies, and had abandoned the whole matter as valueless. There was no attempt on the part of plaintiff to show that they had any value.

[3] The allowance of two hundred dollars as attorneys' fees is reasonable in amount. Ordinarily, as appellant contends, such an allowance must be made in contemplation of services to be rendered, pending the action; but in this case the matter of fixing the amount which defendant should receive for services of her attorneys was by express stipulation between the parties deferred to the close of the trial; and there can be no question, under such circumstances, of the court's jurisdiction to make the order contemporaneously with the judgment. (*Sheppard* v. *Sheppard*, 15 Cal. App. 614, [115 Pac. 751].) That the allowance was made in the judgment rather than by a separate order, can in no wise prejudice appellant. The order by itself

would have the effect of, and could be enforced as, a judgment.

[4] The amount to be given, if anything, as permanent alimony is a matter within the reasonable discretion of the court, under the circumstances of each case. We do not see that $35 a month is excessive or oppressive to a man who is receiving $75 per month, in addition to his board and lodging. The respondent, it is true, has the real estate as her separate property, but it affords her only a place to live, as no income is derived from it at present, and she has no other income. Plaintiff testified that he had for years contributed not less than $50 a month to his wife's support, although she then, as now, had the possession and use of this real property. Is there any reason why he should do less because he has willfully deserted her? Appellant's counsel refers to this requirement for alimony as "a mortgage on Mr. Farrar's existence for the rest of his natural life." [5] It. is the enforcement of an obligation which the appellant took upon himself when he married this woman, and from which he cannot be permitted to free himself by deserting her willfully and without legal cause. A man past middle age can usually rehabilitate himself in life in case of a break in the marriage relations. A woman of that age seldom can; and the courts may very properly safeguard her financial future where, by the fault of her husband, the marriage is dissolved.

The spirit and language in the closing brief of counsel for appellant, in its reflections upon the fairness of the trial judge in the disposition of this case, is offensive and uncalled for, and would have merited an order striking the brief from the files, had the matter been earlier called to the attention of this court. Moreover, there is nothing in the record of this case to give substance to the criticism. [6] It is time it was understood that a trial judge does not sit as a mere referee in a contest of wits between counsel in the case, but that it is not only within his province, but is his duty, to see that as nearly as possible the issues shall be disposed of on their merits; and it is not out of place for him to call attention to omissions in the evidence or defects in the pleadings which are likely to result in a mistrial.

The judgment is affirmed.

Finlayson, P. J., and Thomas, J., concurred.