[L. A. No. 20219.   In Bank.   Dec. 3, 1948.]

MERTELLE A. WEBBER, Appellant, v. LE ROY WEB-
BER, Respondent.

Marshall Stimson, Noel Edwards and Charles Murstein for Appellant.

Stanley M. Evans and J. J. Hughes for Respondent.

SPENCE, J.—Plaintiff commenced this action for divorce on the ground of extreme cruelty. Defendant answered and filed a cross-complaint, but at the trial he offered no evidence in support thereof. Plaintiff was awarded an interlocutory decree of divorce, the custody of the 17-year-old son of the parties, and one-half of the community property, consisting of $50 of postal savings bonds. She has appealed from the "interlocutory judgment," directing her complaint to "those portions" thereof "which denied [her] . . . provision for her support and maintenance and . . . attorney's fees for prosecuting said action, as . . . prayed for." As her principal ground for reversal, plaintiff claims that the trial court committed prejudicial error in denying her a fair trial on these specified issues.

■ "[W]hether or not the error complained of has produced substantial injury to the appellant is always a proper question for consideration upon appeal." (*Peters* v. *Peters,* 156 Cal. 32, 37 [103 P. 219, 23 L.R.A. N.S. 699]; see, also, *Arnold* v. *Arnold,* 76 Cal.App.2d 877, 880 [174 P.2d 674].) While a judgment should not be reversed unless, after an examination of the entire record, it appears that the alleged error "has resulted in a miscarriage of justice" (Cal. Const., art. VI, § 4½), such is the situation here as evinced by the declared attitude of the trial judge during the presentation of plaintiff's case. ■ So pertinent is the following language from *Pratt* v. *Pratt,* 141 Cal. 247, at page 252 [74 P. 742]: "The trial of a case should not only be fair in fact, but it should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand."

■ The record shows the material facts to be as follows: Plaintiff and defendant had been married about 36 years prior to the date of their separation in February, 1946. There were eight children the issue of said marriage, all of whom at the time of trial—in January, 1947—had attained their majority except for the one son, who had recently entered the United States Army. Plaintiff testified that she was 53 years of age, and that she had no property or other source of income. She had become "nervous, grieved and ill" to the extent that she could not longer endure defendant's

conduct toward her, but at the time of trial she was in "fairly good" health. However, her eyes were "apparently weak," and she was "in need of eyeglasses." She also had a number of cavities in her teeth, and she suffered pain by reason thereof. She testified that she had no "trade or . . . profession . . . by which [to] earn a livelihood" and had not worked outside the home during the 37 years since her marriage except, insignificantly "during the last three months"—at a kindergarten for "two hours a day for a week," where she earned a total of $5.00, and at housework for which she received $5.00 for "two days' work." Defendant testified that he was 61 years of age and worked as a laborer. He had worked "continuously" for about "eight years" without missing "any time at all" until some three weeks before the trial, when he "was laid off." His "take-home pay" during the last year of such work ranged "from $40 to $47 a week." He stated that he had not sought other employment, although he "could have gone to work at $140 a month," because he "figured this [trial] was coming up" and he "hated to start on a new job and then be off again." He further stated that "I am not afraid that I cannot get a job. I can get a job again."

The trial judge was of the opinion that "anybody can get a job now . . . men or women" and that capable women earn not less than $7.00 per day for seven or eight hours' housework. So stating that "there are plenty of jobs around," he indicated early in the presentation of plaintiff's case—and before having heard her evidence as to need, condition of health, or lack of means of support—that he was not favorable to an award of alimony. Thereupon defendant's counsel offered to "withdraw the cross-complaint if they waive alimony." The following colloquy then ensued:

"THE COURT: They do not need to waive alimony. *The Court will waive it for them.*

"MR. MURSTEIN (plaintiff's counsel): What is that, your Honor?

"THE COURT: I say they do not have to waive it; *the Court will waive it himself.*

"MR. MURSTEIN: This woman has been married for 37 years. I think she is entitled to be supported.

"THE COURT: Go ahead and *wash your dirty linen.* I won't stop you."

A short time later in declaring adjournment for the day, the court stated: "All right; we will continue *washing the*

*dirty linen* tomorrow morning . . . I will instruct all witnesses in this case to return tomorrow at 10:30, and I think after that I will exclude the witnesses. There is no necessity of having them listen to the *washing of the dirty linen.*"

The next day plaintiff resumed her testimony, directed to the issue of support and maintenance as correlated with her estimate of ''necessary expenses'' for living and medical needs, but the court kept complaining of the ''waste of time.'' Later in the proceedings when plaintiff's counsel, ''concerned with [the matter of] support for the plaintiff,'' expressed the desire to recall her to the witness stand, the court stated: ''I have told you that I am not going to award any support. I have told you that several times . . . I wish you would please stop wasting the Court's time.'' Defendant rested his case without putting on any evidence, and the court announced its judgment—that ''plaintiff will take a decree, and the community property, which consists of $50 in Postal Savings Bonds, will be divided equally between the plaintiff and the defendant, and the custody of the minor child . . . will be awarded to the plaintiff.'' No further sum was allowed as additional fees for plaintiff's counsel. He had already received, pursuant to defendant's payment under a prior court order made by another judge, ''the sum of $100 on account of attorney fees and $15 on account of costs.'' A ''stipulation'' called for ''the balance of attorney fees . . . to be fixed at the time of trial.'' It also appears that under a ''preliminary order'' made some 10 months before the trial, plaintiff had received ''the sum of $90 a month for the support of [herself] and the minor child.''

From this recital of the record, it is apparent that plaintiff did not have a fair trial of her cause by reason of the preconceived and declared aversion of the trial judge to award her financial relief consistent with defendant's responsibilities. Section 139 of the Civil Code provides that '' [w]here a divorce is granted for an offense of the husband, the court may compel him to provide for the maintenance of the children of the marriage, and to make such suitable allowance to the wife for her support, during her life or for a shorter period as the court may deem just, *having regard to the circumstances of the parties respectively.*'' (Emphasis added.) ''The theory of this requirement is that the husband entered upon an obligation which bound him to support his wife during the period of their joint lives, that by his own wrong he has forced her to sever the relation which enabled

her to compel the performance of this duty, and that he is required to make compensation for the offense committed by him which has deprived her of the benefit of the obligation." (*Arnold* v. *Arnold, supra,* 76 Cal.App.2d 877, 885-886.)

As above stated, plaintiff was a woman 53 years old; she had been married to defendant for 37 years; she had borne him eight children; she had no property or source of income other than defendant's provision for her; she had no business or professional skill, no training or education, which would equip her to earn a livelihood in the competitive world; and the community property subject to division between the parties was of nominal value. While plaintiff was in "fairly good" health, her eyes and teeth needed attention, and she had reached a period in her life when physical disability would cause her to be "laid up" for "two or three days at a time" at irregular intervals during the year. The only type of "gainful employment" open to her, in the light of her experience, was some form of "housework" or kindred activity not requiring any special skill, but she was willing to seek such work "in the future" if her health would permit and she was "equal to it." In these circumstances it was vitally important to plaintiff that she be accorded the fullest opportunity to convince the trial judge of the propriety of some allowance for her support and maintenance. But instead, plaintiff was faced with the handicap of his predetermined disposition of that issue regardless of what her proof thereon might be. Thus at the time of his announcement that he would waive alimony on behalf of plaintiff, the trial judge had heard plaintiff's case only to the extent of testimony from defendant (Code Civ. Proc., § 2055) on the issue of his ability to pay, and her own recital of the acts of cruelty on which she based her divorce, as well as reference to her meagre receipts from her own industry since the parties had separated. He then did not know what would be the nature of plaintiff's showing as to her needs and health condition as affecting the vital point of a suitable support allowance, and he had no right, in advance of hearing her testimony, to formulate a fixed concept on that phase of her case. ■ As was said in *Rosenfield* v. *Vosper,* 45 Cal.App.2d 365, at page 371 [114 P.2d 29] : "A trial judge should not prejudge the issues but should keep an open mind until all of the evidence is presented to him."

Defendant argues that regardless of the trial judge's premature comment against an alimony award, plaintiff has no cause for complaint in the light of the evidence on that issue. In this connection he cites the case of *Lamborn* v. *Lamborn,* 80 Cal.App. 494 [251 P. 943], where an order "reducing the amount of alimony from $45 to $30 per month" was affirmed. It was there stated that "where the ex-husband is earning wages by daily labor," alimony should not be allowed "in a sum inducing idleness on the part of the ex-wife" (p. 498), and a finding of cruel acts which have caused no serious detriment to the party prevailing in the divorce action would not justify an award of "alimony that would be in anywise oppressive" (p. 500). But the factual considerations provocative of those observations must be given due regard. There "no children [were] involved" . . . "the parties [were] both young in years" . . . [and] "the laudable wish of the [ex-husband] to remarry [recommended] that he should not be so crippled in his finances that another home may not be established, unless it appears . . . that the necessities of the former wife compelled such a course." (Pp. 498-499.) Moreover, the alimony award as reduced still allowed the ex-wife $30 per month, and though she was unable "to follow her profession or calling as a trained nurse" because of a certain physical ailment, "in other particulars the record" showed her to be "an ordinary healthful person" (p. 497), capable of finding employment "in other fields of labor" but evincing an unwillingness "to earn any part of her own living" (p. 498). Here plaintiff, a woman 53 years of age, the mother of eight children, having been occupied solely with her household duties during some 36 years of married life with defendant, and without training or experience in the industrial or business world to fit her for earning her own livelihood, was allowed no provision for support because the trial judge thought "they [plaintiff and defendant] can both get a job" and so declared his intent not to make an alimony award before plaintiff presented her evidence of need therefor. It is true that defendant, a man 61 years of age, was dependent on his daily labor as a means of support, but it has been said: "A man past middle age can usually rehabilitate himself in life in case of a break in the marriage relations. A woman of that age seldom can; and the courts may very properly safeguard her financial future where, by the fault of her husband, the marriage is dissolved." (*Farrar* v. *Farrar,* 41 Cal.App. 452, 457 [182 P. 989].)

Although after the trial judge's untimely comment on the alimony issue plaintiff was allowed to present evidence thereon, the record shows that he considered it "time wasted," and that his predetermined state of mind continued to exist. Thus, at the end of the trial, he stubbornly declared to plaintiff's counsel: "I have told you that I am not going to award any support. I have told you that several times." Accordingly the finding was made that "defendant has no ability to earn more than sufficient for his own support and maintenance . . . and has no ability to pay further for the support and maintenance of plaintiff or for her attorney's fees or Court costs herein." Such finding appears to be inconsistent with defendant's own testimony as to what he had actually been doing in the way of support for himself and family in previous years by virtue of his wages from daily labor—"$40 to $47 a week . . . take-home pay." It is true that at the time of trial defendant was not employed, but he had been "laid off" only "a short time" and he had purposely refrained from taking "a new job" because of the imminence of the trial. Defendant freely admitted that work was available, that he "could have gone to work at $140 a month, but [he] knew that this was coming up," and he was "not afraid" that he could not "get a job again." ▮ Not only the "husband's [actual] earnings" but "his ability to earn money" by the use of reasonable effort will affect the propriety of an alimony award. (*McGann* v. *McGann*, 82 Cal.App.2d 382, 389 [186 P.2d 424] ; see, also, *Eidenmuller* v. *Eidenmuller*, 37 Cal. 364, 366; *Peyre* v. *Peyre*, 79 Cal. 336, 340 [21 P. 838] ; *Merritt* v. *Merritt*, 220 Cal. 85, 88 [29 P.2d 190].) ▮ While under a preliminary order in this action and pending the trial, plaintiff had received $900 from defendant, representing 10 monthly payments of $90 for the support of herself and the minor son of the parties, such financial relief over the limited period of time did not conclude as a matter of law defendant's legal responsibility to make further contributions for her support commensurate with his ability. ▮ Likewise whether or not plaintiff, during those 10 months, made adequate effort to find suitable work—consistent with her age, ability and health condition—and to establish herself as at least partially self-supporting would enter into the over-all picture in determining the question of defendant's obligation to make some provision for her. (*Farrar* v. *Farrar*, *supra*, 41 Cal.App. 452, 457.)

Unquestionably, "[t]he granting and refusing of alimony in actions for divorce is a matter which lies largely in the discretion of the trial court." (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 413 [170 P.2d 670].) However, such discretion must be a judicious one based upon all of the facts and circumstances of the case. (*Fine* v. *Fine*, 76 Cal.App.2d 490, 495 [173 P.2d 355].) Here it plainly appears that there was no exercise of discretion in resolving the conflicting inferences which might reasonably have been drawn from the entire evidence ultimately adduced on the matter of financial relief sought by plaintiff, but rather an arbitrary determination of the opposing considerations in line with the biased and prejudiced attitude of the trial judge as reflected in his announced prejudgment of the issue. It has been held that a "fair trial" was not accorded the parties where "the trial judge virtually threatened to prejudge [certain previous] testimony" in the event a proposed witness should take the stand and so "undertook to and did in a very irregular way control the conduct of the case" (*Pratt* v. *Pratt, supra,* 141 Cal. 247, 251); where "the trial judge" was unsuccessful in his endeavor to force the defendants to compromise the plaintiff's claim at a certain figure despite his admonition that "it would be to their best interests to settle on that basis," and thereafter he was "not in a position to hear the witnesses for defendants with an open mind," for he had failed in his "duty to refrain from forming an opinion on [factual] issues until the case was finally submitted to him" (*Rosenfield* v. *Vosper, supra,* 45 Cal.App.2d 365, 372); and where "the trial judge" announced his aversion to granting "plaintiff separate maintenance" and tried unavailingly to persuade her "to amend her complaint to pray for divorce," with the result that she had to proceed with her case "under the handicap of a preconceived and declared disinclination of the judge to award her the only relief which she sought" (*Del Ruth* v. *Del Ruth,* 75 Cal.App.2d 638, 648 [171 P.2d 34]). The same legal principle prevails here in accord with the dictates of justice, where plaintiff's subsequent presentation of evidence as to her need for a suitable support allowance, "having regard to the circumstances of the parties respectively" (Civ. Code, § 139), became meaningless in the face of the trial judge's prejudgment of that issue against her, and she was in effect deprived of her day in court on a matter vitally affecting her substantial rights. There is no

need here to speculate on whether or not the result would have been the same had all the relevant evidence on the support issue received the trial judge's full and impartial consideration, and the matter been decided in the exercise of his discretion. In any event plaintiff was entitled to a fair trial on this phase of her case, and under the circumstances she was peculiarly in need of one. (Cf., *Arnold* v. *Arnold, supra,* 76 Cal.App.2d 877, 886.)

There now remains the question of the propriety of the denial of a further allowance of attorney fees to plaintiff. As heretofore stated, under the terms of a prior order in this action plaintiff's counsel had received $115 for fees and costs, and it was stipulated that "the balance of attorney's fees [was] to be fixed at the time of trial." Plaintiff testified that she had no "property of any kind," no "assets," no "source of income whatever." While defendant chose to abandon his cross-complaint and to rest his case without introducing evidence in his own support, and all the witnesses called were on behalf of plaintiff, nevertheless the litigated controversy did not conclude, as defendant maintains, "almost like a default," but rather it was prosecuted as an adversary proceeding, with the parties and their respective counsel in attendance throughout the three days of trial, and the active participation therein of defendant's counsel through the interposition of various objections to the elicited testimony and the cross-examination of the several witnesses. Upon proof of defendant's alleged acts of cruelty, plaintiff was awarded an interlocutory decree of divorce, and under section 137 of the Civil Code an allowance to her for such attorney's fees as were found "necessary" for the prosecution of the action would have been proper. (*Colbert* v. *Colbert,* 28 Cal.2d 276, 279 [169 P.2d 633]; *Parmann* v. *Parmann,* 56 Cal.App.2d 67, 69 [132 P.2d 851].) By reason of these observations there appears to be considerable merit to plaintiff's objection to the denial of further attorney's fees for her counsel as contemplated by the terms of the aforementioned stipulation between the parties, as well as by the cited statute. In this regard, as with the denial of a suitable award to plaintiff for her support, the dominating factor seems to have been the trial judge's bias and prejudice to allowing her such financial relief regardless of any showing of need therefor, and his consequent failure to determine such issues in the exercise of a judicious discretion. (*Fine* v. *Fine, supra,* 76 Cal.App.2d 490, 495.) Accordingly this matter, too, should

be given further consideration in the light of the various factors of record affecting its disposition.

As a further point to be noticed on this appeal, it is appropriate to mention the unbecoming conduct of the trial judge in his order to plaintiff's counsel to "go ahead and wash your dirty linen." As appears from the above review of the record, such disparaging remark followed the trial judge's announcement of his "waiver" of alimony for plaintiff, and could have had no effect upon her other than to emphasize the unlikelihood of his hearing, considering and determining her cause upon its merits. Moreover, in justice to the parties, it must be said that, in fact, there was no "dirty linen" washed at the trial. As ordinarily used, that phrase implies that vices and immoralties have been charged; that mean accusations and vile recriminations have been spoken. (See the Oxford Eng. Dict.; Webster's New International Dict., 2d ed.) No such evidence appears in the record. Prior to the trial judge's objectionable reference, plaintiff in plain and simple words had recounted the years of her life with defendant, the number of their children, the years of her residence in the county, and defendant's acts of cruelty. The latter consisted of a drab narrative of various unexplained absences of defendant from his home; his refusals to take her to places of amusement or to visit their friends; his declarations that he did not love her, and that she was worthless and not fit to be a mother. However, despite such colorless recital by plaintiff of her life with defendant, the trial judge aggravated the point of his unbecoming, as well as inaccurate, characterization of the matters in controversy by repeatedly referring to the case, at various later stages in the proceeding, as involving the "washing of the dirty linen." Such conduct on the part of the trial judge, indicating his unsympathetic attitude toward the litigation, does not accord with recognized principles of judicial decorum consistent with the presentation of a case in an atmosphere of fairness and impartiality, and it cannot be condoned.

Defendant argues that notwithstanding any alleged misconduct of the trial judge which may have denied to plaintiff a fair trial, plaintiff may not urge this point on appeal because her motion for a new trial was not supported by affidavits. It is conceded that plaintiff noticed a motion for a new trial upon the following grounds, among others: "1. Irregularities in the proceedings of the Court by which plaintiff and cross-defendant was prevented from having a

fair trial in said action'' and ''2. Abuse of discretion by the Court by which plaintiff was prevented from having a fair trial in said action.'' But defendant emphasizes the fact that plaintiff filed no affidavit in support of these grounds, and he contends that the failure to file such affidavit is fatal. (Code Civ. Proc., § 658.)

Assuming, without deciding, that the above-mentioned grounds for a new trial would not be available on appeal unless specified in the notice in the trial court, we are nevertheless of the opinion that the mere absence of an affidavit in support of the motion for a new trial should not prevent plaintiff from raising such points on appeal under the circumstances prevailing here. It will be noted that section 658 of the Code of Civil Procedure does not purport to require affidavits in all cases but only in support of those grounds specified in the first four subdivisions of section 657, which grounds can ordinarily be shown solely by facts which do not appear upon the face of the record. But where, as here, the party moving for a new trial under subdivision one of section 657 relies wholly upon facts appearing upon the face of the record, the reason for the rule requiring affidavits ceases and such rule should be held inapplicable (Civ. Code, § 3510). To hold otherwise would do violence to the principle that the law does not require idle acts. (Civ. Code, § 3532.) While there is language in two decisions indicating a contrary view (*Estate of Magerl*, 201 Cal. 162, 168 [256 P. 204]; *Jennings* v. *Day*, 7 Cal.App.2d 555, 558 [46 P.2d 193]), such language is based upon a slavish adherence to the letter of the statute without consideration of the obvious reason and purpose thereof, resulting in an undue limitation upon the power of the trial court in passing upon a motion for new trial, and of the reviewing court on appeal. We therefore believe that such language should be disapproved.

From what has been said, it appears that there should be a reversal, and the question arises as to whether the interlocutory judgment should be reversed in whole or in part. The appeal was taken ''from the whole of said Interlocutory Judgment of Divorce,'' and also from certain portions thereof. In view of the situation which developed on the trial, the cause presented by the pleadings appears to have been only partially tried. Defendant made an offer to ''withdraw the cross-complaint if they waive alimony.'' This was a conditional offer, which was never accepted by plaintiff. Thereafter defendant introduced no evidence in view of the trial

judge's several declarations that no alimony would be awarded. It therefore appears appropriate to reverse the interlocutory judgment in its entirety, to the end that the cause may be fully heard upon the merits. However, nothing which has been said herein is intended to imply that plaintiff will necessarily be entitled to a decree of divorce upon a retrial of the cause, or that any decree of divorce which may be granted to her must necessarily make an allowance for her support or for attorney's fees. But we do hold that both parties are entitled to a full and fair hearing on all the issues made by the pleadings, and that they are entitled to the exercise of a true discretion by the trial court following such hearing.

The interlocutory judgment of divorce is reversed.

Gibson, C. J., Carter, J., and Traynor, J., concurred.

SHENK, J.—I concur in the judgment of reversal on the ground that, as the majority opinion indicates, evidence which should have been considered by the trial court but obviously was not requires a new trial on the issue of whether the defendant is able to contribute anything to the support of the minor son of the parties or the plaintiff, or to pay the balance of court costs and attorney's fees.

I dissent from that portion of the opinion which overrules and disapproves *Estate of Magerl*, 201 Cal. 162, 168 [256 P. 204], and *Jennings* v. *Day*, 7 Cal.App.2d 555, 558 [46 P.2d 193], and necessarily other cases not expressly mentioned. Language in those cases to the effect that a motion for new trial based on the first four grounds of section 657 of the Code of Civil Procedure must be supported by affidavits merely followed the mandatory provision of section 658 of that code where it is said: "When the application [for a new trial] is made for a cause mentioned in the first, second, third and fourth subdivisions of the last section, it must be made upon affidavits; otherwise it must be made on the minutes of the court." Although the motion here was made for causes stated in the first ground of section 657 it was also made for causes specified in subsections 6 and 7 of said section, namely, insufficiency of the evidence to justify the decision, that the decision is against law, and errors in law occurring at the trial as to which affidavits are not required. The motion in this case was based on the minutes of the court, the pleadings and orders, documentary evidence, and the record

of the proceedings on the trial. When so based the record of the trial proceedings and the sufficiency of the evidence may be considered on the motion (Code Civ. Proc., § 660; *Chambers* v. *Farnham,* 39 Cal.App. 17 [179 P. 423]) and is properly before the reviewing court on appeal.

It is entirely unnecessary to overrule cases supporting the mandatory effectiveness of the statute in order to bring about the result desired by the majority in this case. To adhere to the requirements of the statute and the cases supporting it certainly is not ''slavish adherence to the letter of the statute.'' On the contrary the cases overruled evidence a wholesome respect for valid statutory enactments. Refusal to follow the statute and the supporting cases can only result in confusing the established practice.

In *Estate of Magerl* (at p. 165), it was expressly noted that there was no contention that the evidence was insufficient to justify the decision of the trial court. It was held that the motion for new trial on the ground of misconduct of the judge not presented on affidavits was properly denied because not sufficiently supported. In *Jennings* v. *Day* the judgment against the appellant was based upon sufficient evidence. No motion for a new trial was made on any of the first four grounds of section 657 as to which affidavits are required. It was properly concluded on that state of the record that if the appellant wished the reviewing court to consider the asserted claims of passion and prejudice on the part of the trial judge it was his duty to make the motion on the appropriate ground supported by affidavits.

There is no provision of law, mandatory or otherwise, which would foreclose an appellate court from reviewing the entire record when, as here, the motion and the contentions on the appeal include insufficiency of the evidence and errors of law occurring at the trial. When on review it appears that the evidence is insufficient to support the findings and judgment, an appellate court will not hesitate in a proper case to consider the effect of misconduct of the trial judge as a controlling factor in preventing a party from making a proper showing by the introduction of evidence, or in inducing a judgment contrary to the evidence. In view of the record in this case it is clear that the trial judge closed his mind to the provisions of section 139 of the Civil Code which requires the court to consider the circumstances of both parties in determining to what extent the guilty husband should contribute to the maintenance and support of the minor son and

his wife. The reversal is therefore proper because of insufficiency of the evidence to support the judgment in those respects and of the error of law in failing to be guided by the provisions of section 139.

SCHAUER, J.—I dissent. The majority opinion weighs conflicting evidence and reaches a conclusion of fact different from that reached by the trial court. That court found, on substantial evidence, ''that defendant has no ability to earn more than sufficient for his own support and maintenance, has no property of any kind or character and no money except said $50 postal savings, and has no ability to pay further for the support and maintenance of plaintiff or for her attorney's fees or costs herein.'' It does not appear that such finding could have been affected, either as to its substance or legal effect, by any further testimony concerning, or different view of, the plaintiff's asserted needs; hence such finding, under rules which formerly governed appellate tribunals on questions of fact, should be determinative of this appeal.