[S. F. No. 19037. In Bank. Sept. 20, 1955.]

LUCYLE W. PENCOVIC, Respondent, v. FRANCIS H. PENCOVIC, Appellant.

Gross & Svenson and Henry J. Gross for Appellant.

Edwards & Friborg and Alan G. Banks for Respondent.

TRAYNOR, J.—Plaintiff and defendant were married in 1937 and had two children, a son and a daughter. In 1944 plaintiff obtained a divorce and was given custody of the children, who were then 6 and 4 years of age respectively. Defendant was ordered to pay $20 per month for the support of each child. He made one payment, entered the army, and authorized an allotment for his children. From the time of his discharge late in 1945 until 1951 he made no payments for the support of his children, who depended in part on assistance from Alameda county. In 1951 the county instituted criminal proceedings against him. He was found guilty of nonsupport and ordered to pay $20 per month for each child in accordance with the divorce decree and $10 per month for each child for unpaid arrearages. Since then plaintiff has received $30 per month for each child from defendant through the probation officer of Alameda County.

In November 1953 plaintiff filed an affidavit alleging that her earning capacity had been impaired in an automobile accident, that the children required more money for their support, and that she believed that defendant's income was $1,000 per month. She requested the court to increase the support for the children to $100 per month for each child. The court ordered defendant to show cause why he should not be punished for contempt for disobedience of the original support order and why that order should not be modified as requested by plaintiff. After a hearing on the orders to show cause, the court discharged the contempt citation and ordered defendant to pay $50 per month for the support of each child and plaintiff's costs and fees for her attorney. Defendant appeals.

Section 139 of the Civil Code provides: "That portion

of the decree or judgment making any such [support] allowance or allowances . . . may be modified or revoked at any time at the discretion of the court. . . .'' In the exercise of its discretion, the trial court must consider the needs of the dependents and the ability of the husband to meet those needs. (*Sweeley* v. *Sweeley,* 28 Cal.2d 389, 394 [170 P.2d 469].) ■ Its orders, however, need not be based upon the actual income or property of the husband, but may be based solely upon his ability to earn money. (*Webber* v. *Webber,* 33 Cal.2d 153, 160 [199 P.2d 934]; *Eidenmuller* v. *Eidenmuller,* 37 Cal. 364, 366; *Tompkins* v. *Tompkins,* 83 Cal.App. 2d 71, 79 [187 P.2d 840].) ■ No abuse of discretion is disclosed by the record in this case. There is ample evidence of changed circumstances and of defendant's financial ability to meet his children's needs and of his ability to earn money in the future.

The two children, now teenagers attending high school, have greater needs for food, clothing, and medical services than at the date of the original order. Living expenses are greater, but their mother, who has been their chief source of support, was permanently disabled in an automobile accident, spent a year and one half in a hospital, and is $1,000 in debt for the care of the children and the payment of hospital bills. She is employed as a Blue Cross Hospital clerk at $200 a month, but because of her injury cannot work steadily. For two and one half years she was completely unemployed and her earnings for the past year have been less than $150 a month. Since it now costs $127 a month for the care of the son and $118 a month for the care of the daughter, she was been unable to feed and clothe herself and the children on her earnings.

When plaintiff obtained the interlocutory decree, defendant told her that he would ''plan his life accordingly so he would be protected.'' He said that he would ''form this organization where people would give all their possessions into the organization and he would be the head of the organization, nothing would be in his name, everything would be in the name of the organization, yet he would have them arrange for all the money he wanted to use any time he wanted it.''

Defendant's principal contention is that he has neither money nor property nor earnings and that he is therefore without ability to pay the increased amounts. At no time has he contended that he is unable to earn sufficient money to support the children. In 1941 and 1942 he was employed

at the shipyards in Oakland as a timekeeper, and at the time of the divorce he was working as a machinist's helper for about $75 a week. Shortly after the divorce he changed his name to Krishna Venta and founded a religious society, the "W.K.F.L. Fountain." (The letters stand for wisdom, knowledge, faith, and love.) The society was incorporated in 1951 and is governed by a board of directors and officers. Defendant is the treasurer of the society and its spiritual leader or "Master." Neither he nor anyone connected with the society receives a salary as such. About 100 members reside at a home maintained by the society at Canoga Park in Ventura County. They have a communal system of living and none of them works on the outside. All food, clothing, and medical care are provided by the society. Funds are obtained from new members, who transfer all their property to the society on being admitted to membership, and from gifts, plays presented by the members, and donations received for fighting fires. Defendant and his present wife and their young daughter occupy a small room and five other children of defendant's sleep in a garage made into a bedroom with three other children living at the society's home. Defendant makes periodic automobile trips to Denver to carry on the work of the society. Occasionally he stops at Las Vegas and Reno to gamble, and on some occasions the society and various persons have advanced him money for that purpose, but he has never won. In Las Vegas he once lost $2,900 and in payment drew checks on a bank in which he had no funds. The society paid part of the amount due on the checks and no civil action or criminal charges were brought against defendant for issuing them. The society paid the cost of a trip by defendant to Europe in 1949, a trip to South America in 1951, and trips in 1952 to 54 cities in the United States to study fire equipment and fire departments and to advance the cause of the society. A member of the board of directors usually accompanies him on trips and handles temporal matters. For all contributions that he receives and for all his expenditures defendant accounts to the board of directors, and there is no evidence of unauthorized use of society funds. The society pays all of defendant's expenses, including the $60 per month for the support of his children ordered at the criminal proceeding, and at the time of that proceeding it also supplied him with funds with which to buy gifts for his children, ice skates costing $65 for his daughter and a wrist watch, tennis

shoes, and other gifts for his son. It also paid the fees for his attorney in both the 1951 and present proceedings.

Although defendant contends that the support he receives from the society constitutes only a gift to him and that his services are in turn rendered gratuitously, the trial court could reasonably infer from the foregoing evidence that he is in fact receiving compensation from the society for the services he renders as its spiritual leader or ''Master.'' Moreover, in the past this compensation has been measured by defendant's needs, including his obligation to support his children. Accordingly, the trial court could reasonably conclude that the amount of his compensation would be increased to meet any additional obligation imposed upon him, and his reasonable expectation of securing such additional compensation could properly be considered in determining his ability to pay. (*Woolams* v. *Woolams*, 115 Cal.App.2d 1, 7 [251 P.2d 392] ; see *Federbush* v. *Federbush*, 5 N.J.Super. 107 [68 A.2d 473, 476] ; *In re Aspenleiter's Estate*, 114 N.Y.S.2d 486, 488.) Under these circumstances the fact that the society is not obligated to support defendant's children is immaterial, for in fact it has adopted as the measure of his compensation his needs, including his obligation to support his children. The society and defendant, by determining the compensation by reference to defendant's needs instead of by adopting a fixed rate, cannot compel the court to ignore the fact that under their existing arrangement defendant's compensation as measured by his needs includes his obligation to support his children.

Even if the trial court concluded, however, that defendant was not receiving compensation, but only gifts, and that the society would not provide him with additional funds to discharge the increased support award, its order would not constitute an abuse of discretion. Defendant is an able-bodied man, and the trial court could reasonably conclude that he had the earning capacity to discharge the obligation of the support award. ■ By refusing for religious reasons to seek or accept gainful employment defendant may not evade that obligation. ■ Although the guarantee of religious freedom of the First Amendment of the Constitution of the United States is binding on the states under the due process clause of the Fourteenth (*Cantwell* v. *Connecticut*, 310 U.S. 296, 303 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352]), the states may nevertheless regulate conduct for the protection of society, and insofar as such regulations are directed

towards a proper end and are not discriminatory, they may indirectly affect religious activities without infringing the constitutional guarantee. █ Although freedom of conscience and the freedom to believe are absolute, the freedom to act is not. (*Prince* v. *Massachusetts,* 321 U.S. 158, 169-170 [64 S.Ct. 438, 88 L.Ed. 645] ; *Cantwell* v. *Connecticut,* 310 U.S. 296, 303-304 [60 S.Ct. 900, 84 L.Ed. 1213, 128 A.L.R. 1352] ; *Jacobson* v. *Massachusetts,* 197 U.S. 11, 29 [25 S.Ct. 358, 49 L.Ed. 643] ; *Davis* v. *Beason,* 133 U.S. 333, 342-344 [10 S.Ct. 299, 33 L.Ed. 637] ; *Murphy* v. *Ramsey,* 114 U.S. 15, 45 [5 S.Ct. 747, 29 L.Ed. 47] ; *Reynolds* v. *United States,* 98 U.S. 145, 166 [25 L.Ed. 244] ; *People ex rel. Wallace* v. *Labrenz,* 411 Ill. 618, 626, 104 N.E.2d 769, 30 A.L.R.2d 1132, cert. den., 344 U.S. 824 [73 S.Ct. 24, 97 L.Ed. 642], and see cases collected in 30 A.L.R.2d 1138-1141.) █ Certainly there are few interests of greater importance to the state than the proper discharge by parents of their duties to their children, and the Constitution does not compel the subordination of the statutory duty of a parent to support his child to a rule of religious conduct prohibiting gainful employment.

█ Defendant contends finally that the order increasing the amount of the support award is inconsistent with the order discharging the contempt citation, on the ground that the court stated with respect to the alleged contempt that he did not "think there has been any showing . . . of ability to pay." Since defendant was paying $20 per month on the accrued arrearages in addition to the $40 per month currently due under the original order, the contempt citation was presumably based on his failure to pay all of the balance of the accrued arrearages. There is no direct evidence of the amount of such arrearages but it may be inferred that it is in excess of $2,000. Accordingly, it cannot be said that the trial court's conclusion that defendant was unable to pay all the accrued arrearages was inconsistent with its implied finding that he was currently able to pay the increased monthly award.

The orders are affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.