[Civ. No. 23778. Second Dist., Div. Two. Sept. 18, 1959.]

SUSAN G. EVANS, Respondent, v. JOEL H. EVANS, Appellant.

Erb, French & Picone and Samuel B. Picone for Appellant.

Mark F. Jones, Jr., for Respondent.

ASHBURN, J.—Appeal by divorced husband from order modifying alimony award to wife. His claim is that the reduction of the alimony from $650 to $400 a month was an abuse of discretion because it left him, in the light of changed circumstances, unable to discharge all his obligations and have enough left to meet his own living expenses.

On September 13, 1957, the wife was awarded an interlocutory decree of divorce based upon extreme cruelty. It awarded her $650 a month as alimony payable on the first day of each month from July 1, 1957, "until further agreement of the parties or Order of Court, changing or modifying such payments." This was done pursuant to a property

settlement agreement which provided for said amount of alimony and that same be payable until further agreement of the parties or order of court. The agreement and decree thus effectuate the terms of Civil Code, section 139, which declares that "the court may from time to time modify its orders in these respects." There were three children of the marriage, two of whom (aged respectively 16½ and 8 years) were placed in the custody of the wife, and defendant was ordered to pay to her the monthly sum of $150 for the support of each of them. The other child, a son named Kirk, was nearing majority and was placed in the custody of his father; he has been supported by defendant most of the time since the divorce.

On September 19, 1958, defendant initiated a proceeding for elimination of alimony payments and reduction of payments for child support to reasonable amounts. The hearing thereon was contested and dealt only with the subject of alimony. The trial judge made an order fixing alimony payments at $400 a month and making no change in the $150 child support payments. A reduction rather than elimination of alimony was appropriate procedure notwithstanding the sweep of defendant's prayer. (*Anderson* v. *Anderson*, 129 Cal.App.2d 403, 407 [276 P.2d 862].) As above stated, the husband appeals upon the ground that the reduction in alimony payments was inadequate to meet changed circumstances and therefore amounted to an abuse of discretion.

The burden rested upon defendant as moving party (27B C.J.S., § 280, p. 204; *Johnson* v. *Johnson*, 104 Cal.App. 283, 289 [285 P. 902]; *Yates* v. *Yates*, 96 Cal.App. 267, 269 [273 P. 1079]) to convince the trial court that circumstances had so changed as to require, in furtherance of justice, a reduction in the amount of alimony to an extent of more than $250 a month. ▪ In considering such an application, as in the original fixing of the amount, the court has a wide discretion which includes consideration of future prospects of the husband, as well as past experience. ▪ *Pencovic* v. *Pencovic*, 45 Cal.2d 97, 100 [287 P.2d 501]: "In the exercise of its discretion, the trial court must consider the needs of the dependents and the ability of the husband to meet those needs. (*Sweeley* v. *Sweeley*, 28 Cal.2d 389, 394 [170 P.2d 469].) ▪ Its orders, however, need not be based upon the actual income or property of the husband, but may be based solely upon his ability to earn money. (*Webber* v. *Webber*, 33 Cal.2d 153, 160 [199

P.2d 934]; *Eidenmuller* v. *Eidenmuller*, 37 Cal. 364, 366; *Tompkins* v. *Tompkins*, 83 Cal.App.2d 71, 79 [187 P.2d 840].)'' *Hall* v. *Hall*, 42 Cal.2d 435, 442 [267 P.2d 249] : ''The principles which the trial judge must apply in awarding alimony are few and necessarily general in nature. An allowance for support must be made 'having regard for the circumstances of the respective parties.' (Civ. Code, § 139.) In making that award the trial court has a wide discretion. (*Baldwin* v. *Baldwin*, 28 Cal.2d 406, 413 [170 P.2d 670].) 'Circumstances' includes 'practically everything which has a legitimate bearing upon the present and prospective matters relating to the lives of both parties.' (*Lamborn* v. *Lamborn*, 80 Cal.App. 494, 499 [251 P. 943].) '[I]t refers to the needs of the parties and the abilities of the parties to meet such needs; and in measuring such circumstances, consideration should be given to property owned and obligations to be met as well as to ability to earn and actual earnings.' (*Becker* v. *Becker*, 64 Cal.App.2d 239, 242 [148 P.2d 381].)'' To the same effect, see *Bratnober* v. *Bratnober*, 48 Cal.2d 259, 262-263 [309 P.2d 441]; *Webber* v. *Webber*, 33 Cal.2d 153, 160 [199 P.2d 934].

 In trying this question the court is not obligated to accept uncontradicted evidence of one of the parties which is not actually persuasive. (*Bechtold* v. *Bishop & Co., Inc.*, 16 Cal.2d 285, 291-292 [105 P.2d 984]; *Nevarov* v. *Caldwell*, 161 Cal.App.2d 762, 777 [327 P.2d 111]; *Bazaure* v. *Richman*, 169 Cal.App.2d 218, 221-222 [316 P.2d 1014]; *Cicinelli* v. *Iwasaki*, 170 Cal.App.2d 58 [338 P.2d 1005].)

 Defendant's evidence tends to show that though his net income before income taxes was from $29,000 to $31,000 per year at the time the agreement was made and the case tried, this net dropped to $10,922.69 for the period from October 15, 1957 to October 13, 1958; that this was due to the fact that he was a manufacturers' agent engaged in selling to suppliers of aircraft manufacturers, having but three such principals, and that the demand for his commodities had decreased so substantially that his own business had been reduced to about one-third of its former volume. But there are numerous circumstances in the record which would warrant the questioning or rejection by the judge of vital parts of defendant's testimony.

For instance, his evidence as to what his books showed consisted primarily of exhibits prepared by his accountant, Mr. Ferguson, whose ability to interpret them was consid-

erably impaired. After some pages of cross-examination Mr. Ferguson said: "Now, counsel, you have to understand that in this matter I am recovering from shock, from a stroke, rather, and I have been out of the hospital just two weeks. I have difficulty reading, I have difficulty writing, in fact, I have difficulty in all mental processes." When it was suggested that defendant Evans, rather than the witness, should testify about these matters, he volunteered: "I doubt whether Evans can find his way through these books." An effort was then made to have Mr. Ferguson and Mr. Evans jointly testify to certain matters covered by the exhibits but this soon had to be abandoned.

Exhibit A, prepared by Mr. Ferguson, purports to be a summary of defendant's business from October, 1957, to October, 1958. It carries no less than nine pencil changes on its face, none of which is explained in any manner. Defendant testified that he operates from his home, has no secretary or salesmen or other employee. But Exhibit A includes, among expense deductions which were used in arriving at the $10,922.69 net operating profit, the following items: Office salaries $868; office rent $671.04; office supplies and expenses $316.39; office depreciation $361.20; and Social Security payments $230.81. Exhibit B is a series of monthly statements designed to support said summary, Exhibit A. Office expenses appear in the statements for the months of January, 1958, and September, 1958. All monthly statements show as an item of expense "office depreciation." The hearing was held in the latter part of October, 1958, and the statement for that month squares with defendant's testimony for it carries no office expense items whatever. The result reached in this exhibit (B-1) is a net operating profit of $793.48 for the period October 1 to October 13. Clearly, Exhibit A is not a persuasive picture of the situation which it is supposed to depict.

Under the property settlement agreement each party received half of previous accumulations; the value of that half is not clearly shown but seems to have been about $30,000. At the time of the hearing appellant had on deposit in savings banks over $16,000. There was $11,183 in a joint account in the names of Joel Hardwick and Eugene Nordin; the money belonged to defendant; Hardwick is his own middle name and Nordin is his brother-in-law. Formerly that account was in the names of appellant and his secretary, Rosemary Byers. In another savings account defendant had at the

time of the hearing a deposit of $5,595 which belonged to him and was carried in his own name. Why the $11,183 was carried as it was is not explained. The closest approach was defendant's testimony that "[t]hat is my money. He [Nordin] is the administrator of my estate." The arrangement fairly raises an inference of attempted concealment.

Appellant claims that he was required to use portions of his savings to meet the previous alimony and support order, but the testimony given by him and Mr. Ferguson as to the sources of numerous deposits made in his commercial account was uncertain and vague in numerous instances. Appellant contends that the reduction of alimony payments to the extent of $3,000 a year leaves him with only $2,500 for support of himself and Kirk. But he also testified that he spent on the two younger children (who were in the custody of Mrs. Evans) $2,400 in excess of the amount required by the court order; "One of my greatest faults is overgenerosity. I can't help that. But many of the legal things I didn't understand, but I have expended over and above what has been paid out for the children a little better than $2,400 over and above what shows here. In other words, a big boy and a big girl in need of a car for their conveyance back and forth to school. I paid for those and insurance on both of them." If this be true, the present order relieves him of $3,000 in alimony payments to Mrs. Evans and he is free to withhold the $2,400 voluntarily expended on the two younger children. That makes a total of $5,400. Kirk, who was over 20 years of age at the time of the decree in September, 1957, still lives with defendant and is supported by him. Kirk has worked only seven months since September, 1957. He does not like selling and waits in idleness and excellent health "hopeful of an appointment on the Los Angeles police force the first of the year." Appellant is not obligated to support Kirk in idleness.

Though an alimony award may rest heavily upon defendant's present ability to earn and his future prospects (*Pencovic* v. *Pencovic, supra,* 45 Cal.2d 97, 100; *Hall* v. *Hall, supra,* 42 Cal.2d 435, 442; *Bratnober* v. *Bratnober, supra,* 48 Cal.2d 259, 262-263; *Webber* v. *Webber, supra,* 33 Cal.2d 153, 160), defendant did not undertake any showing of what the future held for the aeroplane manufacturers or the suppliers who apparently furnish them tools and other appliances. We cannot infer that the outlook is bad, nor can we overlook the general activity and prosperity which aeroplane manufac-

turers now enjoy. Defendant told the court: "We only have in Southern California two aircraft companies that are in actual production, that is, Lockheed and Douglas, Long Beach, and Long Beach is being held up for changes on the DC-8." We think it a matter of common knowledge in the Los Angeles area that delays due to changes in the Douglas DC-8 have ended.

So far as concerns the needs of Mrs. Evans, the respondent, it appears that she is somewhat extravagant. She now has but $6,200 of her share of the property settlement. She claims that her necessary expenses are $950 a month. This includes an item of $70 a month for telephone bills. Respondent was formerly employed in office work but she has not sought any such job since her divorce. She has, however, become a salesman in the real estate business and in that occupation has earned during the entire period since the divorce the sum of $404. But she is not complaining of her $3,000 reduction in alimony and it is apparent that the court had substantial ground for that action insofar as respondent's needs are concerned.

In the light of the elusive evidence produced in behalf of the motion we cannot say that appellant has shown any abuse of discretion on the part of the court in requiring that he pay $400 alimony to plaintiff while continuing his obligation to pay $300 a month for the two younger children.

The order is affirmed.

Fox, P. J., and Herndon, J., concurred.