Filed 7/18/23  Marriage of Gill CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re the Marriage of DAVINDER and BALDEV S. GILL. | B316281 (Los Angeles County Super. Ct. No. BD630098) |
| DAVINDER K. BADIAL, Respondent, v. BALDEV S. GILL, Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Alison MacKenzie, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Kermisch & Paletz and Lauren M. Lookofsky for Appellant.

Law Office of Bruce Adelstein and Bruce Adelstein for Respondent.

In November 2015, respondent Davinder K. Badial filed a petition to dissolve her marriage with appellant Baldev S. Gill. In March 2019, the family court entered a stipulated judgment of dissolution that resolved the matter after a mediation. Among other things, the judgment awarded two community rental properties to Gill as separate property, required him to refinance the properties within 120 days of the judgment, and obligated him to make an equalization payment to Badial of $512,500 ($497,000 attributable to the rental properties and $15,500 to remaining property issues) upon completion of the refinancing transaction. The judgment provided that if Gill were unable to refinance the properties within the 120-day deadline, then the properties were to be sold immediately and the net sales proceeds divided between the parties, except for $15,500 which would be paid from Gill's share of the proceeds as an equalization payment.

Gill failed to refinance the properties within 120 days of entry of the judgment of dissolution. In August 2020, Badial filed a request for order (RFO), claiming that although the two rental properties had been listed for sale in August 2019, Gill had thwarted the sales process while continuing to collect rent from the properties. Badial sought a monetary sanction against Gill pursuant to Family Code[1] section 271, along with half the net rental proceeds, which half she claimed to be $122,760. In July 2021, during the pendency of the proceedings on Badial's RFO, one of the two properties was sold, and Gill used the proceeds from that sale to purchase Badial's interest in the other property. In October 2021, the family court issued an order that

_____

[1] Undesignated statutory citations are to the Family Code.

denied Badial's request for half the net rental proceeds but awarded her sanctions under section 271 in that same amount, to wit, $122,760.

We reject Gill's appellate challenges to the family court's finding that Gill engaged in conduct sanctionable under section 271. We, however, agree with Gill that the family court erred in setting the amount of sanctions at $122,760 because section 271 authorizes only an award of attorney fees and costs, and not a sanction measured by net rental proceeds. We reject Badial's alternative argument that the $122,760 in net rental proceeds constitutes a community property asset that had been omitted from the dissolution judgment.

Accordingly, we affirm the family court's decision to impose a section 271 sanction on Gill, but reverse the $122,760 amount of the award and remand the matter to the family court to determine a sanction amount consistent with this opinion. Given our disposition, we do not address Gill's claims that certain of Badial's filings were untimely and that the $122,760 in sanctions imposed an unreasonable financial burden on him.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

We summarize only those facts pertinent to our disposition of this appeal.

_____

[2] We derive our Factual and Procedural Background in part from admissions made by the parties in their filings, assertions Badial raises in her appellate brief to which Gill does not respond in his reply, and undisputed aspects of the family court's rulings. (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the facts as well as the law,

3

## 1. *Foundational facts*

Gill and Badial were married on August 29, 1998. Gill and Badial have two children, one born in 2005 and the other in 2007. At an unspecified time, Gill and Badial acquired two 4-unit apartment buildings as community property. As a shorthand, we refer to these two assets as the 48th Street property and the Kenwood property, respectively, and we refer to them collectively as the rental properties.

Gill and Badial separated on October 14, 2015. Badial filed a petition for dissolution on November 10, 2015. On November 15, 2018, the parties and their respective counsel attended a voluntary mediation with a retired judge, which resulted in two memoranda of intent regarding settlement.

On March 12, 2019, the family court entered a stipulated judgment of dissolution, which incorporated the memoranda of intent from the mediation. The judgment included provisions governing custody of Gill's and Badial's two children, setting the amount of child support Gill owed to Badial, and dividing the parties' property and debts.

---

and a reviewing court may make use of statements therein as admissions against the party.' "]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession "by failing to respond in their reply brief to the [respondent's] argument on th[at] point"]; *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; Discussion, *post* [noting that a family court's orders and judgments are presumed correct].)

Section V(B) of the "Attachment to Judgment" bears the heading "Property and Debt Awarded to Respondent,"[3] and listed in Sections V(B)(2) and V(B)(3) are the 48th Street property and the Kenwood property. (Boldface & some capitalization omitted.)

Section VI of the Attachment to Judgment is titled "Details Regarding Division of Community Property Real Estate and Equalization Payment." (Boldface & underscoring omitted.) Because the provisions of Section VI are pertinent to this appeal, they are set forth below:

"A.    Per Sections V(B)(2) and (3), the parties' rental real estate is awarded to Respondent. The Court finds that the equalization payment owed from Respondent to Petitioner for both apartment buildings is $497,000.00. To equalize the remainder of the property issues, Respondent owes Petitioner an additional $15,500.00. Therefore, the total equalization of all community property assets and debts owed from Respondent to Petitioner is $512,500.00.

"B.    The total equalization payment of $512,500.00 is due from escrow upon the refinance of the two properties, to be made payable to the Attorney Client Trust Fund of [Badial's trial counsel]. Respondent must refinance the properties and remove Petitioner's name from title within 120 days from the execution of this Judgment.

---

[3] The judgment identifies Gill as the respondent and Badial as the petitioner.

5

"C.    In the event Respondent is unable to refinance the properties and pay the equalization payment in the amount of $512,500.00 within 120 days of execution of this Judgment, the buildings will be immediately listed for sale and sold with the net sales proceeds being divided, except that Respondent will also pay $15,500.00 out of his share of the sales proceeds from escrow to resolve all remaining property, debt, reimbursement, or credit issues.

"D.    The parties will immediately agree to a listing agent, if a sale is necessary.  If the parties cannot agree, each side will submit two names and resumes to [the retired judge who conducted the parties' mediation] to select the broker within two weeks of not being able to refinance.  The listing price will be the recommended price of the broker unless the parties agree otherwise in writing."

Gill was unable to refinance the rental properties within the 120-day deadline imposed by the dissolution judgment.  On July 29, 2019, the retired judge who conducted the parties' mediation appointed Mark Perez as the listing agent.

**2.    *Overview of proceedings concerning Badial's RFO and Gill's notice of appeal***

On August 31, 2020, Badial filed an RFO.  Badial sought, inter alia, an order modifying Gill's child support obligations, the $15,500 equalization payment identified in Section VI.C of the dissolution judgment, half of the net income from the rental properties, and an award of attorney fees and costs under section 271.  She alleged that the rental "properties ha[d] been on the market for sale since mid-August of 2019, well before COVID

6

emerged," and that Gill had "interfered with the sales process and ha[d] no incentive to sell as he alone collect[ed] the net rents of more than $7,000.00 per month and exclusively enjoy[ed] the tax benefits of ownership." Badial submitted Perez's declaration, wherein he attested that the two rental properties should have been sold in 2019, but that Gill had "put forth obstacles and ma[de] the sale of both properties impossible."

The family court held a hearing on Badial's RFO on December 11, 2020. The court scheduled an evidentiary hearing for May 11, 2021.

At the May 11, 2021 hearing, Gill's counsel cross-examined Perez, and Badial's counsel conducted a redirect examination of the witness. Upon hearing Perez's testimony, the family court granted Perez "full discretion to make all decision[s] pertaining to [the] sales process after meeting and conferring with both sellers, including but not limited to marketing and negotiating decisions, establishing a listing price, selecting the offer, opening/closing escrow, negotiation [of] escrow terms and conditions, and acceptance of final offer[s]." The family court continued the hearing on Badial's RFO to August 6, 2021.

On July 23, 2021, the 48th Street property was sold for $1,030,000. On June 21, 2021, while the sale of the 48th Street property was pending, the parties agreed that Gill would purchase Badial's interest in the Kenwood property with his proceeds from the 48th Street property escrow. The parties valued the Kenwood property at $1,030,000 and Badial's interest at $268,477.96. Prior to the August 6, 2021 hearing, escrow had closed and all funds concerning these transactions had been distributed.

7

On July 30, 2021, Badial filed a brief in which she requested as a sanction under section 271 half the net rental proceeds from the rental properties from December 2018 through July 2021, which Badial claimed amounted to $122,760. Accompanying this brief was a declaration from Badial's counsel "in support of [her] request for attorney's fees and costs per Family Code §271." (Boldface, italics, & some capitalization omitted.) Although Badial's counsel suggested in her declaration that Badial had incurred "fees and costs" of $53,415 "for the current proceeding," Badial's July 30, 2021 brief instead intimated that the correct figure was "$54,152.00." (Underscoring & capitalization omitted.)

The family court heard further argument on Badial's RFO at the August 6, 2021 hearing. On October 13, 2021, the family court issued an order granting in part and denying in part Badial's RFO.[4] In particular, although the family court denied Badial's "request for reimbursement of half the net rent value," the court ordered Gill to pay Badial $122,760 as a sanction under section 271. As noted above, Badial had represented that $122,760 was half of the net rental proceeds Gill had received from December 2018 to July 2021.

On October 19, 2021, Gill timely appealed the family court's rulings on Badial's RFO.[5]

---

[4] We previously granted Gill's motion to augment the record to include the family court's October 13, 2021 order.

[5] Although the family court denied part of Badial's RFO, Badial did not cross-appeal.

## DISCUSSION

" 'A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness.' [Citation.]" (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981 (*Thompson*).) Thus, " ' "it is the appellant's responsibility to affirmatively demonstrate error" ' " by " 'supply[ing] the reviewing court with some cogent argument supported by legal analysis and citation to the record.' [Citation.]" (See *Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492, 497; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 (*Hernandez*).) The appellant bears this burden of rebutting the presumption of correctness accorded to the family court's decision, regardless of the applicable standard of review. (See *Los Angeles Unified School Dist.*, at p. 492 [noting that these principles apply to " ' "an appeal from any judgment" ' "]; see also *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 368, 399 [indicating that an appellant must affirmatively show the trial court erred even if the de novo standard of review applies].)

Gill argues on appeal: (1) "the record is so replete with bias and prejudgment as to indicate [Gill] did not receive a fair hearing"; (2) "the court failed to prepare a written statement of decision, which is prejudicial error"; (3) there was no evidence Gill engaged in conduct sanctionable under section 271; (4) the $122,760 sanction must be reversed because it is not "tethered" to Badial's attorney fees and costs; (5) Badial's filings exceeded the page limitations imposed by the California Rules of Court; (6) the amount of the sanction "imposes an unreasonable financial burden"; and (7) Gill "was not afforded a reasonable opportunity

9

to be heard in opposition" to Badial's RFO.[6] (Boldface, italicization, & capitalization omitted.)

We agree with Gill that the family court lacked statutory authority to set the sanctions based on net rental proceeds, here $122,760. This conclusion moots Gill's other claims of error concerning the amount of the sanction, that is, his assertion that the award constitutes an unreasonable financial burden and the family court denied him a reasonable opportunity to be heard. We conclude that his remaining appellate claims lack merit. Furthermore, we reject Badial's alternative argument to affirm the $122,760 award as a community property asset omitted from the dissolution judgment. In sum, we reverse the amount of the award, affirm the remainder of the family court's sanction order, and remand for further proceedings.

## A. Gill's Allegations of Judicial Bias and Prejudgment Do Not Warrant Reversal

Gill argues the family court was biased against Gill's trial counsel, Daniel Paletz. Gill further claims the family court made statements indicating the court had made a "premature assessment of the sanctions issue" before the parties had finished presenting evidence and argument.

---

[6] Although Gill suggests in his opening brief that he challenges aspects of the family court's order on Badial's RFO other than the award of sanctions under section 271 (e.g., the modification of child support), he has waived any such appellate claims by failing to support them with cogent argument. (See *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'The absence of cogent legal argument . . . allows this court to treat [a] contention as waived.' "].)

10

As a preliminary matter, we observe that Gill does not identify expressly in his opening brief the particular federal or state law he believes supports this claim of error. At one point, Gill notes that Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(iii) "provides that a judge is disqualified if '[a] person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.'" (Quoting Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii).) To obtain relief under this statute, however, Gill needed to move to disqualify the family court judge,[7] and, to secure appellate relief from a ruling denying that motion, he was obligated to seek writ review from this court.[8]

In his reply brief, Gill clarifies that "the issue here" is "whether the appearance of bias by a judge requires overturning an order on appeal under the due process clause of the federal

---

[7] (See *People v. Peoples* (2016) 62 Cal.4th 718, 773 [" 'If a judge refuses or fails to disqualify herself, a party may seek the judge's disqualification. The party must do so, however, "at the earliest practicable opportunity after discovery of the facts constituting the ground for disqualification." ' "]; *id.* at pp. 772–774 [indicating that this requirement applies to claims of disqualification arising under Code Civ. Proc., § 170.1, and concluding that an appellant did not "preserve his claim that [a judge] should have been recused" because the appellant failed to timely seek disqualification of the judge].)

[8] (See *People v. Freeman* (2010) 47 Cal.4th 993, 999–1000 (*Freeman*) ["The statutory basis for disqualifying judges is set forth in Code of Civil Procedure section 170.1, and other sections outline the procedures for determining the motion and the effect of the disqualification. [¶] . . . 'Under our statutory scheme, a petition for writ of mandate is the *exclusive* method of obtaining review of a denial of a judicial disqualification motion.' "].)

Constitution." Accordingly, we address only whether the family court violated Gill's right to due process under the federal Constitution.

" 'A fair trial in a fair tribunal is a basic requirement of due process.' [Citation.] . . . The operation of the due process clause in the realm of judicial impartiality . . . is primarily to protect the individual's right to a fair trial." (*Freeman*, *supra*, 47 Cal.4th at p. 1000.) "[W]hile a showing of actual bias is not required for judicial disqualification under the due process clause, neither is the mere appearance of bias sufficient. Instead, based on an objective assessment of the circumstances in the particular case, there must exist ' "the probability of actual bias on the part of the judge or decisionmaker [that] is too high to be constitutionally tolerable." ' [Citation.]" (*Id.* at p. 996.) Put differently, due process compels a judge's disqualification if, based on an objective review of the record, " 'there is a serious risk' " of " ' "actual bias or prejudgment[.]" ' [Citation.]" (See *id.* at pp. 1004, 1006.)

Under this federal standard, "only the most 'extreme facts' would justify judicial disqualification based on the due process clause." (*Freeman*, *supra*, 47 Cal.4th at p. 996.) *Freeman* further recognized that " 'the codes of judicial conduct provide more protection than due process requires[,]' " and that "the due process clause provides the ' "constitutional floor" ' in matters involving judicial disqualification . . . ." (See *id.* at p. 1005.)

As we explain below, Gill's allegations of judicial bias and prejudgment do not satisfy the standard set forth in *Freeman*.[9]

---

[9] In his reply brief, Gill argues *Freeman*'s standard is inapplicable because that case did not decide "whether the appearance of bias by a judge requires overturning an order on

12

*1.* *Gill fails to establish a constitutionally intolerable probability of actual bias on the part of the family court*

In support of his claim that the family court was biased against Paletz, Gill directs us to the following statements made by the family court during the proceedings on Badial's RFO:

1. "Mr. Paletz, this is what I have the problem with you [*sic*]. You keep talking."

2. "Ms. Ho [(Gill's female trial counsel)] was copied on that [e-mail to the court]. Mr. Paltez, where is Ms. Ho? I was expecting to hear from her today." (Second set of brackets added by Gill.)

3. "I like to see younger women, you know, argue the motions that they've clearly worked on. So next time I'd like to hear from her directly but okay."

4. "Mr. Paltez, so it sounds like you and Ms. Ho are working on the case. Although Ms. Ho wasn't given the opportunity to argue her motion today. Fine."

---

appeal under the due process clause of the federal Constitution." In fact, the appellant in *Freeman* sought to overturn a judgment on the ground that "the appearance of bias by a judge require[d] recusal under the due process clause of the federal Constitution." (See *Freeman*, *supra*, 47 Cal.4th at pp. 996, 999, 1006.) Because we discern no material difference between that question and Gill's judicial bias/prejudging claim, we conclude that *Freeman* supplies the governing standard.

5. Gill asserts that when the family court was "questioned about" the judge's comments concerning Ho, "the court stated, 'I was just more making it known to both parties I would welcome associates having the opportunity to be able to argue the motions that they work so hard on.'"

6. "Ms. Ho sounds like she's the one who did you this [*sic*], she and Ms. Butterworth [(Badial's trial counsel)] need to have a meet and confer . . . ."

7. "To be clear I want that meet and confer between Ms. Ho and Ms. Butterworth . . . ."

Gill argues these statements demonstrate he "clearly did not receive a fair trial, as the Court seemed more concerned with [Gill's] counsel, including [the male attorney's] gender, rather than the merits of [Badial's] RFO." Gill also complains the family court "denied [Gill] from having his primary counsel, Mr. Paletz, represent him in meeting and conferring with [Badial's] counsel . . . ."

With regard to the first passage quoted above, the reporter's transcript from the May 11, 2021 hearing shows the family court stated that it had a "problem" with Paletz because the attorney had interrupted the court. In particular, as the family court was describing the judgment of dissolution, Paletz claimed that the court "misstated" certain provisions governing the rental properties. After Paletz directed the family court to page eight of the judgment, the court stated, "Stop. 'Cause I'm going to look at—"

14

Paletz then interjected, "If you look at—" to which the family court replied, "Stop.  Cause I'm going to look at—stop.  Mr. Paletz, this is what I have the problem with you [*sic*].  You keep talking.  I said, stop, so I could get the judgment, and then you keep on talking and talking.  So stop."  Under these circumstances, the family court's statement could hardly be indicative of bias against Gill's trial counsel.

Furthermore, upon reading the statements concerning Gill's female trial counsel (Ho) in context, we conclude they are not indicative of bias against Gill's male trial counsel (Paletz).  At the May 11, 2021 hearing, the family court remarked that Ho was a recipient of an e-mail containing "DissoMaster" reports prepared by Badial's counsel to calculate Gill's child support obligations.[10]  Badial's counsel represented to the court that Ho had prepared a DissoMaster report that utilized figures differing from those upon which Badial's counsel had relied in conducting her calculations, and that Badial's attorney was unable to meet and confer with Ho prior to the May 11, 2021 hearing.  The family court later stated that because it appeared that Ho was familiar with the child support issue, Ho and Badial's counsel "need[ed] to have a meet and confer . . . regarding their competing DissoMasters, and see if they can make some headway in that."  Accordingly, the family court's order requiring Ho and Badial's attorney to meet and confer does not evince bias on the part of the judge because it was simply a means of encouraging

---

**10** "DissoMaster is a computer software program widely used by courts to set child support and temporary spousal support."  (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1578, fn. 4.)

15

the parties to resolve Gill's child support obligations without judicial intervention.

Although the family court stated that it "like[d] to see younger women . . . argue the motions that they've clearly worked on," the court subsequently clarified that it was merely remarking that the court "would welcome associates having the opportunity to be able to argue the motions that they work so hard on."

For the reasons set forth above, an objective review of the record does not reveal " 'a serious risk' " of actual bias on the part of the family court judge. (See *Freeman*, *supra*, 47 Cal.4th at pp. 1004, 1006.)

> ### 2. *Gill fails to establish a constitutionally intolerable probability of prejudging*

Gill further claims the family court made "premature statements" against Gill and his counsel that "indicate [Gill] did not receive a fair hearing." Specifically, Gill complains of the following statements and conduct on the part of the family court:

> 1. "I don't see the utility to either party having further testimony when there's copious testimony in front of me."
>
> 2. Gill argues that "[o]nly after [Gill's] counsel had to essentially beg the Court to proceed with the evidentiary hearing did the Court finally allow Mr. Paletz to 'cross examine [Perez] for

half an hour and we'll move on.' "[11]  (Second bracketed insertion added by Gill.)

3. Gill contends that "[b]efore testimony was even taken the Court advised [Gill's] counsel that it was 'going to keep [him] on a short leash because I have very little time.  You tend to talk—you advocate at length.  That's just not necessary because I have voluminous pleadings.  I have all the argument in front of me.' "

4. Gill protests the fact the family court "allowed 'redirect' by [Badial's] counsel but would not permit Mr. Paletz to re-cross Mr. Perez."

5. Gill asserts that even though Badial's counsel "was permitted to argue uninterrupted," the family court asked Paletz "in the middle of [his] argument, . . . 'Are you wrapping up?' "

---

[11] We decline to consider Gill's assertion that he "was not permitted to take any testimony of the Parties" because Gill does not support that claim with any citations to the record.  (See *Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 590, fn. 8 (*Alki Partners, LP*) ["[C]ourts will decline to consider any factual assertion unsupported by record citation at the point where it is asserted."].)  Additionally, we observe that after the family court stated at the May 11, 2021 hearing that the issue before it was not a matter that "requires hours and hours of testimony," Gill's counsel stated, "We would agree," and then made arguments unrelated to whether the parties should provide live testimony.  Under these circumstances, it was incumbent on Gill to provide us with a record citation demonstrating the family court did not permit him to take live testimony of the parties.

17

6. "Gill has been listening to this. He better not drag his feet any more. The time is done for that."

7. Gill claims the family court made the following statement when referring to him, " 'This is foot dragging at it's [*sic*] most—it's just the most obvious form of foot dragging. I'm frankly surprised that we need to go forward with this hearing because it's so egregious the foot dragging. There's really no—there's no merit to it.' "

8. "Then the parties are going to have to deal with the fact that Mr. Gill has created a situation where now the tenants won't allow access [to the rental properties]."

9. "I need to determine whether [Gill's] conduct frustrates the policy in the State of California to promote settlement, and to reduce litigation costs. I do find that he has violated—his conduct has violated this important policy. . . . As the court already found when the court made its order back in May he did everything he could to thwart the sale of the property."

10. Gill maintains that when the family court ordered that "Perez ha[ve] 'complete authority' of the sales process," the family court emphasized that " 'if Mr. Gill does not sign within 24 hours [Badial] may sign in his place for either an offer or counter-offer.' "

18

For the reasons explained below, we conclude Gill has not shown the " 'extreme facts' that require judicial disqualification on due process grounds." (See *Freeman*, *supra*, 47 Cal.4th at p. 996.)

First, we acknowledge that items 1, 2, 3, 7, and 8 are statements the family court made at the May 11, 2021 hearing before Gill's counsel cross-examined Perez. Prior to the May 11, 2021 hearing, however, the parties had submitted several declarations and other evidence concerning Badial's RFO, including declarations from Perez.[12] Therefore, the statements in items 1, 2, 3, 7, and 8 indicate the family court was opining that the parties had presented sufficient evidence for it to find that Gill unreasonably delayed the sale of the properties.

Gill also does not direct us to any evidence showing that the family court was unwilling to consider Perez's forthcoming cross-examination testimony in rendering the court's final decision on whether Gill had thwarted the sale of the rental

---

[12] In connection with his due process judicial bias/prejudging claim, Gill asserts that Badial had submitted "untimely and improperly filed pleadings" in advance of the May 11, 2021 hearing. Yet, in this portion of the argument section of the opening brief, Gill does not identify which documents were supposedly "untimely and improperly filed" or explain how this assertion supports Gill's judicial bias/prejudging claim. We thus decline to address this matter further. (See *Alki Partners, LP*, *supra*, 4 Cal.App.5th at p. 590, fn. 8 [holding that an appellate court is not required to " 'thumb[ ] through and reread[ ] earlier portions of a brief ' " to determine whether an assertion made in "the argument section of the brief" has evidentiary support]; *Hernandez*, *supra*, 37 Cal.App.5th at p. 277 [" 'We are not bound to develop appellants' arguments for them.' "].)

properties. In fact, shortly after making the "foot dragging" remark identified in item 7, the family court stated that it would "accept" the documentary evidence the parties had submitted "subject to any cross-examination of Mr. Perez." Accordingly, the statements in items 1, 2, 3, 7, and 8 do not give rise to a " 'serious risk' " of " 'prejudgment' " "as to require disqualification" under the due process clause. (See *Freeman*, *supra*, 47 Cal.4th at pp. 1004, 1006.)

Regarding item 4 above, Gill seems to argue the court was not an impartial factfinder because it refused to allow his trial counsel (Paletz) to conduct a re-cross examination of Perez after Badial's trial counsel concluded her redirect examination of that witness. In her respondent's brief, Badial asserts the court indicated it would "give each side the same amount of time to examine Perez," and Badial claims, "Paletz presumably could have reserved some of his time for re-cross examination." In his reply brief, Gill does not contest Badial's representations, nor does he offer any evidence showing the family court barred further examination of Perez for any reason other than the amount of time that had elapsed. Indeed, at the conclusion of Paletz's cross-examination of Perez, the family court stated, "Your time is more than up." Consequently, Gill fails to show the family court's refusal to allow him to conduct a re-cross examination of Perez deprived him of his due process right to a fair and impartial adjudicator.[13]

_____

[13] (See *Rudick*, *supra*, 41 Cal.App.5th at pp. 80, 89–90 [concluding appellants "implicitly concede[d]" a point "by failing to respond in their reply brief to the [respondent's] argument" relating thereto]; *Brown v. American Bicycle Group, LLC* (2014)

Concerning item 5, we observe that at the outset of the May 11, 2021 hearing, the family court had remarked that Paletz "tend[s] to . . . advocate at length," and opined, "That's just not necessary because [the court had] voluminous pleadings" and "all the argument in front of" the court. That the court interrupted Gill's trial counsel during argument to ask whether he was "wrapping up" thus appears to have been the family court's effort to manage its calendar. Under the circumstances, that question falls short of establishing that the family court was not impartial.

Next, because the family court made the statements identified in items 6, 9, and 10 *after* Perez had testified and the parties presented oral argument on Badial's request to authorize Perez to sell the properties, these statements are not evidence that the family court had made a premature assessment regarding whether Perez should be given that authority.

Gill claims the family court's statement from the August 6, 2021 hearing that it " '*already found when the court made its order back in May* [Gill] did everything he could to thwart the sale of the property' " (i.e., item 9) is proof the family court "decid[ed] and rul[ed] on *the issue of sanctions* prior to" the August 6, 2021 hearing, "without permitting [Gill] any opportunity to respond and argue on the issue." (First set of italics added by Gill.) Gill insists the court "specifically reserved on the issue of sanctions, to be heard and argued at the August 6, 2021 hearing."

_____

224 Cal.App.4th 665, 673–675 (*Brown*) [holding that "[t]he mere fact that [a] trial court issue[s] rulings adverse to [a party] on several matters in th[e] case, even assuming one or more of those rulings were erroneous," is insufficient to establish a violation of the "due process right to an impartial judge"].)

21

Gill apparently overlooks the fact that Badial's request to authorize Perez to sell the rental properties was predicated on her theory that Gill had intentionally delayed those transactions. We conclude that in the course of granting Perez "full discretion to make all decision[s] pertaining to [the] sales process" at the conclusion of the May 11, 2021 hearing, the family court had already impliedly found that Gill had interfered with the sale of the rental properties. (See *In re Marriage of Sahafzadeh-Taeb & Taeb* (2019) 39 Cal.App.5th 124, 145 ["[G]iven no findings to the contrary, [an appellate court] must presume in favor of the trial court's order ' "every finding of fact necessary to support it[.]' "].)[14] Because Gill's counsel cross-examined Perez and presented oral argument at the May 11, 2021 hearing, he had an opportunity to persuade the family court not to render that finding before the August 6, 2021 hearing. Furthermore, Gill does not argue—let alone offer evidence demonstrating—that the family court denied him an opportunity to show that this finding did not support an award of sanctions under section 271.

Given our conclusion that the family court found at the May 11, 2021 hearing that Gill intentionally delayed the sale of the rental properties, the court's statements at the end of the hearing that Gill "better not drag his feet any more" (item 6) and that Badial may sign documents relating to the sale of the

---

[14] In Discussion, parts B–C, *post*, we reject Gill's assertion that this presumption (i.e., the doctrine of implied findings) does not apply to this appeal. Our conclusion that the family court had found Gill sought to thwart the sale of the rental properties is also consistent with the court's statement at the May 11, 2021 hearing that "[t]his is . . . just the most obvious form of foot dragging."

properties in Gill's place if he refuses to do so (item 10) do not indicate the family court made a premature judgment on whether Badial was entitled to an award of sanctions. Rather, the family court was simply making statements consistent with its prior finding that Gill had unreasonably obstructed the sale.

In sum, Gill fails to establish " 'a serious risk' " of " ' "prejudgment" ' " on the part of the family court vis-à-vis Gill's liability for sanctions under section 271. (See *Freeman*, *supra*, 47 Cal.4th at pp. 1004, 1006.)[15]

> 3. *Gill's reliance on* In re Marriage of Iverson *and* Webber v. Webber *is unavailing to establish bias or prejudgment here*

Gill argues *In re Marriage of Iverson* (1992) 11 Cal.App.4th 1495 (*Iverson*), and *Webber v. Webber* (1948) 33 Cal.2d 153 (*Webber*), support his claim that "the record is so replete with bias and prejudgment as to indicate [Gill] did not receive a fair hearing." In particular, Gill claims *Iverson* and *Webber* establish "a trial court's orders will be overturned where a judge's statements . . . indicated the hearing 'of a case does not appear to be fair.' [Citation.]" (Quoting *Iverson*, at p. 1501.) Gill further

---

[15] Gill argues that even though the retired judge from the parties' mediation had appointed Perez, the family court later took "credit for putting 'Mr. Perez in place[.]' " Gill also seems to claim that because the family court erroneously blamed him for delay in the sale of the rental properties, the family court was biased against him. Gill fails to explain how these arguments are anything more than his disagreement with the family court's factual findings. Mere disagreement with a court's decision or findings is not sufficient to establish a due process violation. (See *Brown*, *supra*, 224 Cal.App.4th at pp. 673–675.)

23

contends the court's "comments regarding [Gill's trial] counsel and his gender" are analogous to those of the family court in *Iverson*. Additionally, Gill avers the family court made statements akin to those of the trial judge in *Webber*, thereby demonstrating that the family court had prejudged the sanctions issue before presentation of all evidence and argument.

We reject Gill's assertion that the mere appearance of bias or prejudgment on the part of a judicial officer gives rise to a due process violation. *Freeman* "disapproved" of the *Iverson* decision "[t]o the extent that th[e] opinion[ ] contain[s] language inconsistent" with the high court's conclusion that the " 'appearance of partiality' " alone does not offend due process. (See *Freeman*, *supra*, 47 Cal.4th at pp. 996, 1005, 1006 & fn. 4.) In arriving at that conclusion, the *Freeman* court explained that in 2009 (i.e., after the *Iverson* decision), the United States Supreme Court clarified that "only the most 'extreme facts' would justify judicial disqualification based on the due process clause." (See *Freeman*, at p. 996, quoting *Caperton v. A. T. Massey Coal Co.* (2009) 556 U.S. 868, 887.) Although *Freeman* did not explicitly discuss its prior decision in *Webber*, *Freeman*'s holding that due process requires " 'a serious risk' " of " ' "actual bias or prejudice" ' " necessarily overrules language to the contrary found in the *Webber* opinion. (See *Freeman*, at pp. 1004, 1006; *Webber*, *supra*, 33 Cal.2d at p. 155 [" 'The trial of a case should not only be fair in fact, but it should also appear to be fair. And where the contrary appears, it shocks the judicial instinct to allow the judgment to stand[,]' " quoting *Pratt v. Pratt* (1903) 141 Cal. 247,

252 (*Pratt*)];[16] see also *Newport Beach Country Club, Inc. v. Founding Members of Newport Beach Country Club* (2006) 140 Cal.App.4th 1120, 1131 ["The California Supreme Court . . . has recognized 'the authority of an older case may be as effectively dissipated by a later trend of decision as by a statement expressly overruling it.' "].)

We acknowledge, however, that *Freeman* left *Iverson* intact insofar as the Court of Appeal held the appellant there established a due process violation by making "a showing of actual bias based on comments by the judge[ ] about women . . . ." (See *Freeman*, *supra*, 47 Cal.4th at p. 1006, fn. 4.) That aspect of *Iverson* does not help Gill.

In *Iverson*, a wife who filed a dissolution action sought to invalidate a premarital agreement with her husband. (See *Iverson*, *supra*, 11 Cal.App.4th at p. 1497.) In rejecting the wife's testimony that the husband " 'was the one that proposed marriage to her[,]' " the family court judge remarked, " '[W]hy, in heaven's name, do you buy the cow when you get the milk free[?]' " (See *id.* at pp. 1498–1499.) In contrast, when the family court's statements regarding Paletz and Ho are considered in context, it is apparent the family court did not harbor gender bias. (See Discussion, part A.1, *ante*.) Instead, the family court

---

**16** Although Gill cites the *Pratt* decision in passing, he does not claim the instant case is analogous to *Pratt* or attempt to reconcile *Pratt* with *Freeman*. We thus decline to discuss *Pratt* further. (See *Hernandez*, *supra*, 37 Cal.App.5th at p. 277 [" 'We are not bound to develop appellants' arguments for them.' "]; *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10 ["[A]n appellant is required to not only cite to valid legal authority, but also explain how it applies in his case."].)

25

explained it preferred to have the attorney who worked on the child support issue meet and confer with opposing counsel regarding that issue and to give younger lawyers an opportunity to participate in court proceedings on issues on which they worked.  (See *ibid.*)

*Webber* is also distinguishable.  There, "before having heard [the wife's] evidence as to need, condition of health, or lack of means of support," the trial judge in a dissolution action repeatedly stated he would not award any alimony to the wife.  (See *Webber*, *supra*, 33 Cal.2d at pp. 155–157.)  In particular, the trial judge twice stated at the outset of the proceeding that he "will waive [alimony] for" the wife, and, when the wife's counsel insisted on presenting evidence in support of her request for alimony, the judge responded, " 'Go ahead and wash your dirty linen.  I won't stop you.' "  (See *id.* at pp. 156–157, italics omitted.)  When the wife's counsel later sought to recall the wife to the witness stand, the trial judge responded:  " 'I have told you that I am not going to award any support.  I have told you that several times . . . I wish you would please stop wasting the Court's time.' "  (See *id.* at p. 157.)

In contrast, here, although the family court provided the parties with its initial impressions regarding certain documentary evidence and had questioned the utility of having live testimony at the May 11, 2021 hearing, the court did not foreclose the possibility that Gill's cross-examination of Perez could affect the court's decision on Badial's RFO.  (See Discussion, part A.2, *ante*.)  In fact, the family court stated it would accept the documentary evidence subject to the cross-examination of that witness.  (See *ibid.*)

26

Accordingly, Gill fails to establish that he was deprived of his due process right to a trial before an impartial adjudicator.

## B. Gill Was Not Entitled to a Statement of Decision

Gill argues the family court "committed reversible error, warranting reversal of its sanctions orders" by "fail[ing] to prepare a written statement of decision" upon Gill's request.[17] (Boldface & capitalization omitted from second quotation.)

Whether a party may obligate a family court to issue a statement of decision regarding a sanctions award appears to be an open question.[18] We need not resolve that question because, assuming arguendo Gill had a right to a statement of decision, he failed to invoke that right properly.

Code of Civil Procedure section 632 provides: "In superior courts, upon the trial of a question of fact by the court, written

---

[17] The only finding Gill attacks in his briefing based on the absence of a statement of decision is the family court's award of sanctions under section 271. We acknowledge that at one point in his opening brief, Gill intimates that the family court should have issued a statement of decision concerning Badial's request for "a modification of support." Because Gill does not develop this point beyond mere intimation, we do not consider it. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 154 ["We are not 'obliged to speculate about which issues counsel intend to raise.' "].)

[18] (See Hogoboom & King, Cal. Prac. Guide: Family Law (The Rutter Group 2023) ¶ 15:129, pp. 15–31 to 15–32 [stating "it is quite arguable that" a party should be entitled to request a statement of decision "in connection with family law motion and OSC hearings," but acknowledging that several Courts of Appeal have concluded " 'nothing requires' " a court to honor such a request "in instances other than trial"].)

27

findings of fact and conclusions of law shall not be required.  The court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial upon the request of any party appearing at the trial.  The request must be made within 10 days after the court announces a tentative decision unless the trial is concluded within one calendar day or in less than eight hours over more than one day in which event the request must be made prior to the submission of the matter for decision.  The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision.  After a party has requested the statement, any party may make proposals as to the content of the statement of decision.  [¶]  The statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties." (Code Civ. Proc., § 632.)

Gill identifies two instances in which he requested a statement of decision from the family court.  First, Gill claims his attorney requested a statement of decision at the August 6, 2021 hearing after the court "recit[ed] . . . [its] sanction orders, but prior to the . . . issu[ance of the] child support orders . . . ."  Second, Gill directs us to a written request for a statement of decision that he filed on August 13, 2021.  As we explain below, neither of these requests triggered the family court's duty to issue a statement of decision.

28

### 1. *Gill's oral request for a statement of decision was deficient*

Regarding Gill's oral request for a statement of decision, the reporter's transcript from the August 6, 2021 hearing reflects the following colloquy occurred between the family court and Gill's trial counsel:

"[Gill's counsel:]  Your Honor, this is [Gill's] counsel. I would like to ask you to do a statement of decision because this matter has been continued over multiple dates so, and it's lasted well over eight hours now in combination.  So if you could do a written statement in writing [*sic*] so that we can respond we would greatly appreciate that.

"The Court:  I don't think it's over eight hours. Absolutely not.  You guys were here for one afternoon and now—

"[Gill's counsel:]  No, Your Honor, in culmination with [*sic*] the other hearing, the other two hearings.

"The Court:  What other two hearings?  No.  I still—I still don't believe it's over eight hours.  No.  I'll take a look at the statement of decision statute again, and if I believe that it does fall within the statement of decision statute then I will do that, but I'm telling you right now I don't think it does, but I will take a look again.

"[Gill's counsel:]  Thank you, Your Honor."

The passage reproduced above demonstrates Gill's trial counsel requested a *written* statement of decision from the family court based on the attorney's belief that the duration of the proceedings on Badial's RFO was longer than eight hours.  The

29

parties agree on appeal, however, that for the purposes of Code of Civil Procedure section 632, "[t]he matter . . . last[ed] less than eight (8) hours" over more than one day.  (See *Artal*, *supra*, 111 Cal.App.4th at p. 275, fn. 2 [noting that we may construe a statement in a brief as an admission against the party making it].)  For that reason, we agree with the family court that it had no obligation to prepare a *written* statement of decision.  (See Code Civ. Proc., § 632 ["[W]hen the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties."].)

Further, insofar as Gill's trial counsel's entreaty may be construed as a request for an *oral* statement of decision, it did not trigger the family court's obligation to issue such a ruling.  "Whether made orally or in writing, the request for a statement of decision '*shall* specify' the particular *controverted issues* the requesting party wishes the court to address."  (Fairbank et al., Cal. Prac. Guide:  Civil Trials & Evidence (The Rutter Group 2022) ¶ 16:149, p. 16–34; see also Code Civ. Proc., § 632 ["The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision."].)  Put differently, "Code of Civil Procedure section 632 requires a party requesting a statement of decision to specify those controverted issues as to which it is requesting a finding."  (*Atari Inc. v. State Bd. of Equalization* (1985) 170 Cal.App.3d 665, 674–675 (*Atari Inc.*).)  "[A] general, nonspecific request for a statement of decision does not operate to compel a statement of decision as to all material, controverted issues."  (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292–1293.)

30

The colloquy reproduced above shows that Gill's counsel did not specify *any* controverted issues as to which the attorney was seeking a statement of decision. Indeed, the court observed in its minute order for the hearing that Gill "did not articulate . . . the issues . . . as to which he was belatedly requesting a statement of decision."[19] Because Gill did not request findings on any specific issues, his challenge based on the absence of a statement of decision on the section 271 sanction award fails. (See *Atari Inc., supra,* 170 Cal.App.3d at p. 675 ["Failure to request findings on specific issues results in a waiver as to those issues."].)

2.      *Gill's August 13, 2021 written request for a statement of decision was untimely*

On August 13, 2021, Gill filed a request for a written statement of decision. In the filing, Gill requested that the family court address the following issues:

>      "1.    The legal and factual basis as to the Court's determination that [Gill] shall pay to [Badial] *Family Code* § 271 sanctions and/or attorney fees and costs to [Badial] in the amount of $122,760.00.
>
>      "2.    . . . [A]ll legal and factual bases for the Court's ruling, including, but not limited to whether [Gill] was given proper notice of the amount of *Family Code* § 271 sanctions being sought; whether the sanction imposes an unreasonable

---

      [19] For the purpose of this analysis, we assume arguendo that Gill's counsel's oral request was timely.

financial burden upon [Gill]; the legal basis for which the Court considered [Badial's] Brief Regarding Remaining Issues for Hearing filed July 30, 2021, wherein [Badial's] counsel amends [Badial's] sanctions request to $122,760.00 and legal fee request to $54,152.00 from the combined request of $13,455.00 in the Request for Order filed August 31, 2021 [*sic*]; and whether the Court considered the lack of an updated *In re Marriage of Keech (1999)*75 Cal.App. 4th 860 [*sic*]."

As we noted in Discussion, part B.1, *ante*, it is undisputed that the trial on Badial's RFO lasted less than eight hours. Consequently, for Gill to secure a statement of decision, he needed to request one "prior to the submission of the matter for decision." (See Code Civ. Proc., § 632; see also Cal. Rules of Court, rule 3.1590(n) ["When a trial is completed within one day or in less than eight hours over more than one day, a request for statement of decision must be made before the matter is submitted for decision and the statement of decision may be made orally on the record in the presence of the parties."].)

"A cause is deemed submitted" under Code of Civil Procedure section 632 "when either of the following first occurs: [¶] '(1) the date the court orders the matter submitted; or [¶] '(2) the date the final paper is required to be filed or the date argument is heard, whichever is later.' " (See *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 977 (*Gray*); see also Cal. Rules

of Court, rule 2.900(a) [indicating that "[a] cause is deemed submitted in a trial court" under these circumstances].)

Gill's written request for a statement of decision was untimely. Neither side claims that the family court had at some point " 'order[ed] the matter submitted' " for the purpose of Code of Civil Procedure section 632. (*Gray*, *supra*, 103 Cal.App.4th at p. 977.) Further, Gill does not claim that he filed his request at some point before " 'the final paper [was] required to be filed . . . .' " (See *ibid.*) It follows that the date the matter was deemed to have been submitted was "the date argument [was] heard"—i.e., August 6, 2021. (See *ibid.*) Gill filed his request seven days after that hearing. He thus waived his right to a statement of decision. (See *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1281 (*A.G.*) [noting that a party may " 'waive[ ] a statement of decision . . . by not requesting one in a timely manner' "].)

In sum, the family court did not err in denying Gill's requests for a statement of decision.

## C. Although We Affirm the Family Court's Decision to Award a Sanction Under Section 271, We Reverse the Amount of the Sanction

Section 271 provides:

"(a)  Notwithstanding any other provision of this code, the court may base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys. An award of attorney's fees and costs pursuant to this section is in the nature of a sanction. In making an award pursuant to this section, the court

33

shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities.  The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed.  In order to obtain an award under this section, the party requesting an award of attorney's fees and costs is not required to demonstrate any financial need for the award.

"(b)     An award of attorney's fees and costs as a sanction pursuant to this section shall be imposed only after notice to the party against whom the sanction is proposed to be imposed and opportunity for that party to be heard.

"(c)     An award of attorney's fees and costs as a sanction pursuant to this section is payable only from the property or income of the party against whom the sanction is imposed, except that the award may be against the sanctioned party's share of the community property."

(§ 271.)

"Sanction orders under section 271 are . . . reviewed under the abuse of discretion standard.  [Citation.]  Applying the abuse of discretion standard, we consider de novo any questions of law raised on appeal, but will uphold any findings of fact supported by substantial evidence." (*In re Marriage of Smith* (2015) 242 Cal.App.4th 529, 532.)  Under the substantial evidence standard, " ' " ' "all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in [order] to uphold the [finding] if possible." ' " ' [Citation.]"  (See *In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1479.)  An aspect of the substantial evidence standard is " 'the doctrine of implied findings[,]' " which

34

provides that " 'the reviewing court must infer . . . that the trial court impliedly made every factual finding necessary to support its decision.' [Citation.]" (See *Thompson*, *supra*, 6 Cal.App.5th at p. 981; see also *id.* at pp. 982–983 [indicating that if "the doctrine of implied findings [is not] disabled on appeal," then review of factual findings is governed by " 'the substantial evidence rule' "]; *A.G.*, *supra*, 246 Cal.App.4th at p. 1281 [" '[U]nder the doctrine of "implied findings," . . . appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the judgment for which there is substantial evidence.' "].)

Gill argues the family court abused its discretion in awarding $122,760 under section 271 because: (1) "there was no evidence" that he or his attorney "frustrated the promotion of settlement and the reduction of litigation costs"; and (2) "the sanctions amount awarded by the Court is not 'tethered to attorney fees and costs[.]' " Although we disagree with Gill's first contention, we conclude the family court abused its discretion in calculating the amount of the sanctions award because section 271 and cases interpreting it require the award be based on attorney fees and costs and do not permit the net rental proceeds measure the family court employed here.

Before turning to the substance of Gill's claim of error, we reject Gill's assertion that because the trial court refused to issue a statement of decision, the doctrine of implied findings is inapplicable. As we explained in Discussion, part B, *ante*, Gill waived his right to obtain a statement of decision. (See *A.G.*, *supra*, 246 Cal.App.4th at p. 1282 [" ' "[A]ppellant's express or implied waiver of a statement of decision on the appealed issues *unequivocally* invokes the doctrine of 'implied findings.' " ' "].)

35

### 1. The family court's decision to award a section 271 sanction is supported by substantial evidence

As set forth in Discussion, part A.2, *ante*, the order granting Badial's request for sanctions under section 271 stems from the family court's finding that Gill had intentionally delayed sale of the rental properties.  Gill disputes that finding by arguing that "[a] reading of the pleadings and testimony in this matter[ ] clearly demonstrates [Gill's] compliance and cooperation in the sale of the rental properties."  Gill attributes the delay in the sale of the properties to Perez, Badial, and the "lack of cooperation from tenants."

Each side vigorously disputes the other party's account of the events occurring between the entry of the dissolution judgment and the ultimate disposition of the rental properties.  Under our deferential standard of review, we need not wade into every point of evidentiary contention asserted by the parties.  "Our job is only to see if substantial evidence exists to support the [ruling] in favor of the prevailing party, not to determine whether substantial evidence might support the losing party's version of events."  (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 582 (*Schmidt*).)  We conclude substantial evidence supports the family court's finding that Gill deliberately thwarted the sale of the two rental properties.

On August 31, 2020, Badial filed a declaration from Perez.  In that declaration, Perez attested he was a "broker associate . . . with over 20 years of experience with real estate sales and brokering, land management, property management, business administration, and real estate investment."  Perez stated, "In [his] professional opinion, the[ rental] properties should have sold in 2019" because "the market [was] . . . very active, the properties

36

[were] attractive salable investment properties in desirable areas . . . with positive cash flows, good capitalization rates, and high potential for long-term equity growth," and he claimed to have "received over 40 credible offers for both properties combined." Perez further claimed that "COVID-19 [was] not proving to be an impediment to motivated and willing sellers," and that during the pandemic, Perez had "continued to sell similar properties in the same neighborhood."

Perez declared that the 48th Street property's listing expired on July 10, 2020, the Kenwood property's listing had expired on August 3, 2020, and he was "not able to relist [the properties] since Mr. Gill ha[d] ceased communication and not been willing to move forward with the sales." Perez further attested that Gill had "restricted access to the properties, developed overly extensive escrow terms and conditions, prolonged and delayed responses when timely decisions/sign-offs were required, initiated lengthy and drawn out negotiations, aggravated potential buyers in escrow, frustrated the escrow agent, and created many obstacles and nuances throughout the entire process."

For instance, Perez claimed that after escrow opened on the 48th Street property at the price of $1,099,000 on November 11, 2019, the buyer requested approximately $10,000 as a credit for termite extermination. Perez stated that although Perez, the buyer's agent, and Badial had each agreed to "credit the buyer for . . . $7,500 split 3 ways[,] Mr. Gill refused to negotiate and wanted to fully terminate escrow . . . ." According to Perez, "the sale did not go through because Mr. Gill was extremely difficult to move forward with on the transaction."

Perez related that "[t]he buyer's appraisal eventually expired, and escrow was fully cancelled in March 2020."

Another example of Gill's alleged intransigence identified in Perez's August 31, 2020 declaration was Gill's 21-day delay in opening escrow for the Kenwood property. Perez stated he "received a cash offer above the asking price at $1,125,000" on March 6, 2020, but escrow was not opened until March 25, 2020 because Gill kept adding "escrow terms and conditions" and provided "delayed responses/approvals and signatures." Perez asserted the buyer ultimately "got nervous" and terminated escrow because of the onset of the COVID-19 pandemic.

In May 2021, Badial filed Perez's supplemental declaration. Perez stated he relisted the rental properties for sale in January 2021. But, according to Perez, "Gill once again ha[d] no intention to sell the properties and all the same issues with Mr. Gill's lack of motivation to sell ha[d] been apparent, such as finding fault in buyers/offers when they [we]re strong offers and creating nuances and roadblocks [at] every step of the sales process . . . ." For example, Perez attested that although he received an " 'all-cash offer' with no inspection" for the Kenwood property in January 2021, the sale ultimately did not occur because Gill refused to allow this buyer to conduct "a final walk through" of the property "once the lock-down was over."

Although Gill acknowledges Perez made "statements . . . in his declarations indicating the rental properties ha[d] not sold due to [Gill's] actions," Gill argues his trial counsel elicited on cross-examination testimony from Perez that "directly contradicted" Perez's prior written testimony. Under the substantial evidence standard of review, we may reject "the statements of a witness who has been believed by the trier of

fact" only if "it [is] physically impossible for the statements to be true, or their falsity [is] apparent without resorting to inferences or deductions." (See *In re Jordan R.* (2012) 205 Cal.App.4th 111, 135–136, citing *People v. Friend* (2009) 47 Cal.4th 1, 41 (*Friend*).)

Gill's arguments fall short of satisfying this standard. For example, in an apparent attempt to show that Gill was not the cause of the delay in the sale of the rental properties, Gill asserts Perez testified that Perez "had difficulty gaining access to the rental properties after the pandemic broke out." Gill further claims Perez confirmed that Gill "promptly signed" listing agreements when Gill had been asked to do so. Similarly, Gill argues Perez testified that Gill "signed off on every offer that [Badial] had signed off on." Gill lists eight other propositions that he claims are supported by Perez's cross-examination testimony. All of Gill's challenges to Perez's credibility require us to resort to inferences and deductions in order to determine how they supposedly support Gill's position. Also, "impeachment arguments" that amount to nothing more than "simple conflicts in the evidence" do not warrant reversal (e.g., the trial testimony "differed in some details from [the witness's] previous statements"). (See *Friend*, *supra*, 47 Cal.4th at pp. 40–41.)

Because Gill's attempts to undercut Perez's written testimony regarding Gill's obstreperous behavior ignore the applicable standard of review, we conclude the family court did not err in relying on that testimony. Viewing that evidence in the light most favorable to Badial, we conclude it supports the court's express finding that Gill "frustrated the policy of the law to promote settlement of litigation" and "reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (*Schmidt*, *supra*, 44 Cal.App.5th at p. 582 ["We

39

must . . . view the evidence in the light most favorable to the prevailing party."].) Accordingly, substantial evidence supported the family court's decision to impose sanctions against Gill under section 271. (See § 271, subd. (a) [permitting a family court to impose a sanction under such circumstances]; *Thompson*, *supra*, 6 Cal.App.5th at p. 981 ["A single witness's testimony may constitute substantial evidence to support a finding."].)

>2.     *The family court erred in awarding sanctions not tethered to attorney fees and costs*

Gill argues the family court abused its discretion in awarding Badial $122,760 as a sanction under section 271, which amount Badial "represented was half the net rental proceeds."[20] Gill also contends the award is inconsistent with the family court's denial of Badial's request for reimbursement of those rental proceeds. He further contends "any sanctions orders were limited to $53,415, which reflects attorney fees and costs [Badial] actually incurred." As set forth in our Factual and Procedural Background, part 2, *ante*, the $53,415 figure is the amount Badial's counsel proffered in her declaration in support of her request for "Attorney Fees and Costs per Family Code §271." (Boldface & italics omitted.)

Badial agrees that "[a] section 271 sanction must be 'tethered to charged or anticipated attorney fees and costs' " and that a "sanction will be reversed if it 'bear[s] no relationship to

---

**20** In connection with this claim of error, Gill argues in passing that Badial "falsely represented" that $122,760 constituted half the net rental proceeds. Because Gill does not develop this argument further, we decline to address it. (See *Hernandez*, *supra*, 37 Cal.App.5th at p. 277.)

[the moving party's] attorney fees and costs.' " She, however, claims the family court "could have sanctioned Gill any amount that it thought proper, provided that it was less than Badial's total attorney's fees and costs" and the amount did not impose an unreasonable financial burden on Gill. She relies on *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205 (*Corona*) for this proposition.

Badial contends "[h]er total attorney's fees and costs were approximately $200,000 ($124,486.30 in attorney's fees with Butterworth [citation] and $82,210 with her prior attorneys [citation]." She further claims that "[i]n selecting $122,760, or half the net rental income that Gill improperly obtained because of his delay in selling the properties, the [family] court set the sanctions award within the appropriate range[,] . . . resulting in Gill losing his improperly received profits." According to Badial, "This remedy satisfies the public policy goals of Section 271" because "[a] party that knows he will lose his profits caused by his improper delay and lack of cooperation will lose his incentive to engage in such sanctionable tactics." She asserts that an award of a section 271 sanction is not merely compensatory but also intended to "punish and deter the problematic conduct."

Badial's position that a family court can award section 271 sanctions as long as (1) the award does not exceed the requesting spouse's total attorney fees and costs and (2) does not impose an unreasonable financial burden is not supported by the text of section 271 or case law. Accordingly, the family court abused its discretion in measuring sanctions based on half the net rental proceeds from the subject properties. (See *Miyamoto v. Department of Motor Vehicles* (2009) 176 Cal.App.4th 1210, 1218 [" ' "Action that transgresses the confines of the applicable

41

principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." ' "].)

>  a.  *Badial's interpretation of section 271 is inconsistent with its text and cases interpreting that statute*

Badial's argument that the only limits on an award of section 271 sanctions are her total attorney fees and costs and Gill's financial circumstances is inconsistent with the text of section 271.  Section 271 states that a "court may *base an award of attorney's fees and costs on the extent* to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  (See § 271, subd. (a), italics added.)  On its face, the statute requires an award of attorney fees and costs that is at least logically connected to the sanctionable conduct.  If averting an unreasonable financial burden and ensuring that a sanction does not exceed a party's total attorney fees and costs were the only limitations on an award under section 271, then there would be no need to include text providing that the amount of the award be "base[d] . . . on the extent" of a party's or an attorney's sanctionable conduct.  Because " '[w]e do not presume that the Legislature performs idle acts, nor do we construe statutory provisions so as to render them superfluous[,]' [citation]" (see *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390), we decline to adopt Badial's interpretation of section 271.

*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142 (*Sagonowsky*), and *Menezes v. McDaniel* (2019) 44 Cal.App.5th

42

340 (*Menezes*), shed further light on the meaning of this statutory text.

In *Sagonowsky*, the appellate court reversed the family court's section 271 sanctions award of (1) $500,000 for the wife's "conduct in increasing the cost of the litigation and frustrating settlement"; and (2) "$180,000 for causing a reduction in the sale price of real property awarded to [the husband] in the dissolution judgment, because these amounts were untethered to attorney fees and costs incurred by [the husband]." (*Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1144.) In arriving at this conclusion, the *Sagonowsky* court explained that section 271 does not limit sanctions " 'to the cost to the other side resulting from the bad conduct' " because "the misconduct may increase attorney fees in ways that are indirect and difficult to prove." (See *Sagonowsky*, at pp. 1155–1156.) Consequently, "the party seeking sanctions pursuant to section 271 need not establish *with great precision* an amount directly caused by the improper conduct." (See *Sagonowsky*, at p. 1155, italics added.)

Although Badial relies on *Sagonowsky*, we fail to see how it supports her arguments. First, the *Sagonowsky* court rejected a measure of sanctions that was not based on attorney fees and costs. (See *Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1156 ["[W]e must conclude the plain language of section 271 did not authorize the court to award $500,000 to punish [the wife] for her culpable conduct, or $180,000 for the reduction in the sales price of the [real] property, because those amounts bear no relationship to [the husband's] attorney fees and costs."].) Second, as to awards of attorney fees and costs under section 271, *Sagonowsky* merely recognized that a sanction may be measured based on an approximation of such fees and costs. (See *Sagonowsky*, at

43

p. 1155 ["[T]he party seeking sanctions pursuant to section 271 need not establish with great precision an amount directly caused by the improper conduct."].)  Nowhere did the *Sagonowsky* court hold that any amount of fees and costs not exceeding a spouse's *total* fees and costs would satisfy section 271's requirement that fees and costs be "tethered to attorney fees and costs incurred by [that spouse]" for the purpose of the statute.  (See *Sagonowsky*, at p. 1144 [summarizing the court's holding].)

Badial's reliance on *Menezes* is similarly of no avail.  There, the family court awarded $200,000 as a section 271 sanction for the wife's noncompliance with court orders facilitating the transfer of real property in Brazil to her husband.  (See *Menezes*, *supra*, 44 Cal.App.5th at pp. 343–345.)  Included in the husband's request for sanctions were costs like travel expenses to Brazil and lost vacation time that the *Menezes* court rejected because they were "not tethered to attorney fees and costs."  (See *id.* at p. 351.)  The husband's request for sanctions encompassed other expenses as well, including "approximately $80,000–$90,000 in California attorney fees and $16,000–$17,000 in Brazil attorney fees . . . ."  (See *ibid.*)

The Court of Appeal concluded the trial "court's order sanctioning [the w]ife $200,000 lack[ed] detail that [would have] allow[ed the appellate court] to track the award to the evidence in the record."  (See *Menezes*, *supra*, 44 Cal.App.5th at p. 352.)  "Because there [was] not sufficient evidence demonstrating $200,000 tethered to charged or anticipated attorney fees and costs," the Court of Appeal reversed the award, and remanded the matter to the family court with an instruction to "include in its order information regarding the basis for the sanction to allow for meaningful review."  (See *ibid.*)

44

Quoting *Sagonowsky,* the *Menezes* court reiterated the fact that the very words of section 271 provide that a sanction must be measured in attorney fees and costs. (See *Menezes*, *supra*, 44 Cal.App.5th at p. 350 [" 'The plain language of section 271 authorizes the court to impose "attorney's fees and costs" as a sanction for conduct frustrating settlement or increasing the cost of the litigation[,]' " quoting *Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1153].) *Menezes* also confirms what is apparent from the plain language of section 271: The statute exposes " ' "a party who . . . engages in conduct frustrating or obstructing the public policy" ' " of promoting settlement and encouraging cooperation to " ' "liability for the adverse party's costs and attorney fees *such conduct generates*." [Citation.]' [Citation.]" (See *Menezes*, at pp. 348–349, italics added.)

In sum, this case law collectively establishes that although section 271 does not require a *direct* relationship between a party's improper behavior and the opposing party's attorney fees and costs, the statute still requires some connection between the two. Although we agree with Badial that section 271 is designed to discourage a party's "improper delay and lack of cooperation," the means by which the Legislature sought to achieve that objective is "an award of attorney's fees and costs" that is "base[d]" on "the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation" and "encourag[es] cooperation between the parties and attorneys." (See § 271, subd. (a).) In requesting section 271 sanctions, Badial asked for approximately $54,000 and change as attorney fees and costs. (See Factual & Procedural Background, part 2, *ante*.) We fail to discern how an amount more than double those fees and costs is connected to the

45

sanctionable conduct.  Accordingly, we reject Badial's assertion that the statute empowered the family court to disgorge from Gill $122,760 in "improperly received profits" as long as the disgorged amount did not (1) exceed her total attorney fees and costs and (2) impose an unreasonable financial burden on him.  (See *Sagonowsky*, 6 Cal.App.5th at p. 1153 ["Section 271 'means what it says'—sanctions available under the statute are limited to 'attorney fees and costs.' "]; see also *T-Mobile West LLC v. City and County of San Francisco* (2019) 6 Cal.5th 1107, 1123 ["[N]o legislation pursues its objectives at all costs."].)

> b.      Corona *does not support Badial's contention that the family court could award section 271 sanctions in any amount not exceeding her total attorney fees and costs as long as the award would not impose an unreasonable financial burden on Gill*

Badial quotes *Corona* to argue that the family court could have awarded any amount of sanctions as long as the amount did not exceed her total attorney fees and costs or impose an unreasonable financial hardship on Gill:  " '[S]ection 271 . . . does not require a correlation between the sanctioned conduct and specific attorney fees' "; and " 'Here, the court had information permitting it to make a reasoned determination of an appropriate amount of sanctions that would not impose an undue hardship on Richard [(the husband)] *and would not exceed the total attorney fees Claire* [(the wife)] *had incurred.*' "  (Quoting *Corona, supra,* 172 Cal.App.4th at pp. 1226–1227, italics added by Badial.)  *Corona*, however, never had occasion to decide the validity of the rule Badial advocates.

46

In that case, the appellate court upheld under section 271 the family court's award of $5,000 in sanctions to the wife, even though the family court did not identify the statutory basis for its award.  (See *Corona, supra,* 172 Cal.App.4th at pp. 1209–1210, 1213–1214, 1223–1224, 1228.)  On appeal, the husband relied on a defunct statute in the Code of Civil Procedure as the relevant sanctions statute.  (See *id.* at pp. 1223–1224.)

The $5,000 sanctions award was based on the husband's failure to comply with obligations regarding paying housing costs under a marital settlement agreement.  (See *Corona, supra,* 172 Cal.App.4th at pp. 1210–1211, 1213–1214.)  The wife had submitted a declaration indicating that obtaining the award of housing cost " 'arrears cost [her] in excess of $200,000 in attorney fees.' "  (See *id.* at p. 1227.)  The parties had also litigated other issues concerning the enforcement of the settlement agreement (see, e.g., *id.* at p. 1212 [indicating that the wife sought awards of other amounts allegedly due under the settlement, including "payments for her telephone long-distance bills and automobile insurance"]), and the wife indicated in one of her income and expense reports that "she still owed her attorneys over $146,577.97 in fees, and had paid them approximately $183,000 as of that time" (see *id.* at p. 1227).  It was in this context that the appellate court ruled the family court "had information permitting it to make a reasoned determination of an appropriate amount of sanctions that would not impose an undue hardship on [the husband] and would not exceed the total attorney fees [the wife] had incurred."  (See *ibid.*)

Badial extrapolates from this language that any award not exceeding her total attorney fees and costs would be appropriate and, presumably, not an abuse of discretion.  This is simply a

47

non-sequitur given the facts of *Corona*.[21]  (See *In re H.E.* (2008) 169 Cal.App.4th 710, 721 [" 'Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.' "].)

For all these reasons, we reverse the amount of the sanctions award, and remand the matter to the family court to determine an amount of attorney fees and costs that is consistent with our opinion.  (See *Menezes*, *supra*, 44 Cal.App.5th at p. 352 [reversing an award under section 271 "to the extent it impose[d] a . . . sanction untethered to . . . attorney fees and costs" and "remand[ing] the matter for further consideration"].)

---

[21]  Badial also cites *Corona*'s statement to the effect that section 271 does not "require a correlation between the sanctioned conduct and specific attorney fees . . . . " (*Corona, supra*, 172 Cal.App.4th at p. 1226.)  The *Corona* court made this statement in the course of rejecting the husband's substantial evidence attack on the award for lack of evidence of the wife's financial condition.  (See *ibid*.)  The court responded with the aforementioned quotation and observed that section 271 "is not a need-based statute" apparently to distinguish section 271 attorney fee awards from other Family Code statutes awarding attorney fees based on the spouses' relative financial condition. (See *id*. at pp. 1226–1227; see, e.g., *In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 39–40 [characterizing an award of pendente lite attorney fees as a "need-based fee award"].)  Given this context, the quoted language cannot carry the weight Badial's argument imposes on it.

**D.    Even if Arguendo Badial's Declarations Exceeded Applicable Page Limitations, Gill Fails To Show These Violations of State Law Prejudiced Him**

Gill contends the family court "should not have considered [Badial's] multitude of filings as they far exceeded the permitted page allotment."  In particular, he asserts that Badial's "declarations filed in relation to her RFO, not including those of her attorney, totaled 32 pages."  He argues the aggregate length of Badial's declarations violated California Rules of Court, rule 5.111(a), which provides:  "A declaration included with a request for court order or a responsive declaration must not exceed 10 pages in length.  A reply declaration must not exceed 5 pages in length, unless:  [¶] (1) The declaration is of an expert witness; or [¶] (2) The court grants permission to extend the length of a declaration."  (Cal. Rules of Court, rule 5.111(a).)

"Because we are addressing state law error, [Gill] must show" that it is " ' "reasonably probable that a result more favorable to [him] would have been reached in the absence of the error." ' [Citations.]"[22]  (See *People v. Gonzalez* (2018) 5 Cal.5th 186, 195, 201; see also *Parkford Owners for a Better Community v. County of Placer* (2020) 54 Cal.App.5th 714, 721 ["[T]he ultimate burden of demonstrating reversible error *is always* on the appellant," italics added].)  Absent from Gill's briefing is any explanation as to how Badial's alleged contravention of the page

---

[22]  Gill does not contend that this purported error was structural.  (See also *People v. Lewis* (2021) 11 Cal.5th 952, 973 [noting that errors of state law are "[t]ypically" subject to harmless error review].)

limitations prejudiced him.  Accordingly, we do not address this challenge any further.

**E.  Badial Fails To Demonstrate that the Net Rental Proceeds Awarded as a Section 271 Sanction Would Constitute an Omitted Asset Under Section 2556**

Badial contends that even if half the net rental proceeds could not be awarded as a sanction under section 271, then we should affirm the family court's award of $122,760 because her half of the net rental proceeds was an omitted asset under section 2556.  We disagree.

Section 2556 provides in pertinent part:  "In a proceeding for dissolution of marriage, . . . the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding."  (§ 2556.)  In other words, an omitted asset is one that has not been adjudicated previously.

Here, Badial's claim to net rental proceeds was "previously adjudicated by a judgment" through the parties' mediation proceedings resulting in the memoranda of intent regarding settlement and the stipulated judgment described in part 1 of our Factual and Procedural Background.  Badial conceded in a declaration supporting her RFO that in agreeing to the settlement and stipulated judgment, she was aware of rental income as a potential marital asset to be divided.  Indeed, even though she believed she was "obviously" entitled to 50% of the net rental profits, she "agreed to let go" of those profits in return for Gill's agreement to add the net monthly rental income for purposes of calculating child support and to manage the

50

properties "at no cost."[23]  Under these circumstances, the net rental proceeds were not an omitted asset.

## F.  Our Reversal of the Amount of the Sanction Moots Gill's Remaining Appellate Claims

Gill argues that Badial violated provisions of the Code of Civil Procedure and California Rules of Court by failing timely to file and serve certain documents, including the brief her counsel filed on July 30, 2021 requesting "half the net rental proceeds [Gill] received" as a sanction under section 271.  Gill further claims the family court infringed upon his due process right to a reasonable opportunity to oppose Badial's request for sanctions by considering these untimely filings.

The only harm Gill claims to have suffered as a result of Badial's alleged failure to submit her filings in a timely fashion is his supposed inability adequately to respond to Badial's assertion that the $122,760 in net rental proceeds was recoverable as a sanction under section 271.  Gill does not claim that Badial's tardy filings deprived him of a reasonable opportunity to oppose Badial's claim that he engaged in sanctionable conduct by delaying the sale of the rental properties.

Accordingly, even if Gill were to prevail on his state law and federal due process challenges to the timeliness of Badial's filings, he would be entitled to a reversal of only the amount of

---

[23] It is not clear what amount of net rental proceeds was to be considered for purposes of calculating child support because Badial also claimed in her declaration that when she agreed to the memoranda of intent regarding settlement and the stipulated judgment, Gill had misrepresented that the monthly net rental proceeds were only $1,007.

the sanction, and not of the family court's finding that Gill had engaged in conduct sanctionable under section 271. (See *Gray v. Cotton* (1913) 166 Cal. 130, 139 ["The practice of reversing a judgment in part only is well settled in this court [citations], and should be followed where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action."]; 9 Witkin, Cal. Procedure (6th ed. 2021) Appeal, § 917, p. 926 ["The reviewing court may reverse a judgment in part and affirm it in part, with or without directions, where the judgment is severable as to causes of action, issues, or parties, and the erroneous part may be severed from the remainder."]; *Sagonowsky*, *supra*, 6 Cal.App.5th at pp. 1152–1153 [indicating that whether a party's "conduct warrant[s] a sanction under section 271" is an issue severable from whether the amount of the sanction is proper].)

Gill also claims that the $122,760 the family court awarded as sanctions "imposed an unreasonable financial burden" on him. A favorable ruling on this challenge (1) would not affect the family court's determination that Gill was deserving of section 271 sanctions; and (2) would be superfluous given our reversal of the amount of those sanctions. We thus do not address it further.

In short, because our reversal of the amount of the section 271 sanction moots these remaining appellate claims, we decline to address them. (See *In re D.P.* (2022) 14 Cal.5th 266, 276 ["A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the

matter in issue in the case before it." ' [Citation.] A case becomes moot when events ' "render[ ] it impossible for [a] court, if it should decide the case in favor of [a party], to grant him any effect[ive] relief." ' "].)

## DISPOSITION

The family court's October 13, 2021 order awarding a sanction under Family Code section 271 to respondent Davinder K. Badial is affirmed in part and reversed in part. We affirm the family court's determination that appellant Baldev S. Gill engaged in conduct warranting sanctions under section 271, but reverse the amount of the sanction, $122,760. Upon remand, the family court shall exercise its discretion to determine the amount of attorney fees and costs under section 271 and conduct further proceedings consistent with this opinion. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.